530 A.2d 462

**Thomas J. McMEEKIN**

v.

**HARRY M. STEVENS, INC., Appellant,**

v.

**DOUGLAS FURNITURE CORPORATION.**

Superior Court of Pennsylvania.

Argued April 28, 1987.

Filed Aug. 20, 1987.

William P. Boyer, Canonsburg, for appellant.

Stephen P. McCloskey, Washington, for Douglas, appellee.

BEFORE: CIRILLO, President Judge, and
MONTEMURO and TAMILIA, JJ.

TAMILIA, Judge:

Appellant, Harry M. Stevens, Inc. (Stevens), appeals from
an Order of judgment entered against him, contending the
trial court erred in instructing the jury as to the application
of the Comparative Negligence Act (Comparative Act), 42
Pa.C.S.A. § 7102 *et seq.*

In 1980, Stevens operated a restaurant facility near Har-
risburg. Plaintiff, in the original action, brought suit
against Stevens alleging that a chair upon which he was
sitting at the establishment had collapsed. Stevens joined
Douglas Furniture Corporation (Douglas), the manufacturer
of the chair, as an additional defendant, on both negligence
and strict liability counts. On September 9, 1985, trial
proceeded against Stevens in negligence, and against Doug-
las on a strict liability theory only. At the close of the
evidence, the court charged the jury that it could assess the
percentage of causal liability between Stevens and Doug-
las.[1] Stevens objected, arguing that comparative apportion-
ment applies only to situations involving multiple negli-
gence tortfeasors; it does not apply to situations where an
alleged negligence tort-feasor and an alleged strict liability
tortfeasor are involved. In effect, Stevens maintains the
court improperly applied the Comparative Act.

On September 20, 1985, the jury returned a verdict in the
amount of $355,000 against appellant/Stevens and appel-

1. The trial judge instructed the jury:
   If you find that both defendants, Stevens and Douglas, are liable to
   the plaintiff, your award of damages should be divided between
   both defendants in proportion to their relative degrees of causal
   liability; that is, where recovery is allowed against more than one
   defendant, each defendant shall be liable for that proportion of the
   total dollar amount awarded as damages in the ratio of the amount
   of its causal liability to the amount of causal liability attributed to
   all the defendants against whom recovery is allowed. If you find
   that both defendants are causally liable, it is your duty to apportion
   the relative degree of liability between both defendants; that is, the
   liability of both defendants would total 100%, and you would
   apportion a percentage of that liability to each defendant.
   (T.T. 9/19/85, p. 23).

lee/Douglas, assessing percentages of liability at seventy per cent (70%) attributable to Stevens and thirty per cent (30%) attributable to Douglas.[2]

On September 30, 1985, Stevens filed a motion for post-trial relief, in which it argued that the trial court erred in giving the instruction on "comparative fault", that it had preserved this issue by way of exception to the trial court's charge and that such error warranted a new trial.

Later, on November 21, 1985, Stevens and Douglas entered a stipulation and agreed the jury verdict would be paid by the two defendants at the percentages determined by the jury, but that Stevens could pursue its motion for post-trial relief. (The plaintiff is not included in this appeal.) The stipulation also said Stevens desired to shift twenty percent (20%) of the jury verdict to Douglas, leaving Stevens responsible for fifty percent (50%) instead of seventy percent (70%) and Douglas responsible for fifty percent (50%) instead of thirty percent (30%) of the damages. An appeal was timely filed with this Court.

The issue before us for review is whether comparative liability may be applied so as to apportion liability between defendants where one defendant is responsible for negligent conduct and the other is responsible under a strict products liability theory and, if comparative liability is not applicable, whether the Uniform Contribution Among Joint Tort-Feasors Act, 42 Pa.C.S.A. §§ 8321 *et seq.* (Uniform Act) may be applied in such a situation.

■ While there is no Pennsylvania case law directly addressing the first question, a careful review of the Comparative Act [3] leads us to conclude it was never the intention of our legislature to extend the scope of that Act to any actions except those grounded in negligence.

2. The court molded the jury verdict to reflect an amount for delay damages. Judgment was entered, therefore, for $501,000. The stipulation of the parties provided that the amount in controversy was about $100,000, i.e. twenty percent (20%) of the molded verdict (Slip Op., Roberts, J., 9/24/86, p. 2).

3. § 7102. **Comparative negligence**

(a) **General rule.**—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the

The doctrine or rule of comparative negligence, which ... has usually been established by a statute providing that ... the contributory negligence of the person injured will not be a complete bar to recovery, but that there shall be an apportionment of responsibility, or of damages, in accordance with the relative fault of the parties concerned, is designed to eliminate the rigors of the common-law contributory negligence rule, and, in particular, the "all or nothing" effect of that rule....

57 Am.Jur.2d § 426.

We said in our recent Opinion, *Krivijanski v. Union R.R. Co.*, 357 Pa.Super. 196, 515 A.2d 933 (1986):

Words used in legislation are to be accorded their common meaning and usage. *Brinkley v. Pealer*, 341 Pa.Super. 432, 491 A.2d 894 (1985). 'Statutes are not presumed to make changes in rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions.' *Harka v. Nabati*, 337 Pa.Super. 617, 624, 487 A.2d 432, 435 (1985) citing. [sic] *Commonwealth v. Miller*, 469 Pa. 24, 27–28, 364 A.2d 886, 887 (1976).

*Id.*, 357 Pa.Superior Ct. at 205, 515 A.2d at 938.

A review of the Comparative Act reveals the Act is aimed only at "all actions brought to recover damages for negli-

fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

**(b) Recovery against joint defendant; contribution.**—Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

gence" (42 Pa.C.S.A. § 7102(a)). Further, section 7102(b) deals with apportionment among defendants in the ratio of their "causal negligence" (42 Pa.C.S.A. § 7102(b)).

The legislature could have specifically included in the statute forms of conduct not considered to be negligence; they chose, however, only to provide for actions grounded in negligence. Negligence describes a specific form of conduct and, absent a clear directive from the legislature, we do not think it appropriate to expand the scope of the legislation to include conduct which is not negligent conduct. *See Krivijanski, supra.* Moreover, our course is dictated by the Pennsylvania Supreme Court's insistence upon maintaining the distinction between traditional negligence and strict products liability concepts. *See Lewis v. Coffing Hoist Division,* 515 Pa. ——, 528 A.2d 590 (1987); *Azzarello v. Black Brothers Co., Inc.,* 480 Pa. 547, 391 A.2d 1020 (1978), and *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975).

■ As to the second alternative before us for consideration, we find the Uniform Act[4] may properly be applied so that joint tortfeasors may obtain contribution from each other, despite the fact that the one joint tortfeasor has been found liable in negligence and the other in strict products liability.

In *Svetz v. Land Tool Co.,* 355 Pa.Super. 230, 513 A.2d 403 (1986), we addressed this identical issue and concluded

---

4. The Uniform Contribution Among Tort-feasors Act provides (in pertinent part):

**42 Pa.C.S.A.**

**§ 8322. Definition**

As used in this subchapter 'joint tortfeasors' means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.

**§ 8324. Right of contribution**

(a) **General rule.**—The right of contribution exists among joint tortfeasors.

(b) **Payment required.**—A joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

that of necessity, where strictly liable and negligent defendants have acted as joint tortfeasors, contribution among them can be properly awarded. In discussing the policy behind the Uniform Act, we said:

The Uniform Contribution Among Tort-feasors Act in Pennsylvania provides that a joint tortfeasor who has discharged more than his pro rata share of a common liability may seek contribution from any other tortfeasor who contributed to the loss. See: 42 Pa.C.S. § 8324(b). The doctrine of contribution is based on equity. Therefore, the Act must be examined with equity in mind. (Citations omitted).

The focus of the Uniform Act is on the relationship existing between tortfeasors rather than the manner in which several tortfeasors have been held liable to an injured claimant.... In *Puller v. Puller*, 380 Pa. 219, 221, 110 A.2d 175, 177 (1955), the Supreme Court observed that 'contribution is not a recovery for the tort [committed against the plaintiff,] but the enforcement of an equitable duty to share liability for the wrong done.'... Thus, a tortfeasor's right to receive contribution from a joint tortfeasor derives not from his liability to the claimant but rather from the equitable principle that once the joint liability of several tortfeasors has been determined, it would be unfair to impose the financial burden of the plaintiff's loss on one tortfeasor to the exclusion of the other. It matters not on which theory a tortfeasor has been held responsible for the tort committed against the plaintiff. So long as the party seeking contribution has paid in excess of his or her share of liability, it would be inequitable under the Act to deny that party's right to contribution from a second tortfeasor who also contributed to the plaintiff's injury.

*Id.*, 355 Pa.Superior Ct. at 238, 513 A.2d at 407.

Unlike the Comparative Act, the Uniform Act is not geared only toward negligence situations. In *Svetz*, we acknowledged,

'Joint tortfeasors' are defined as 'two or more persons jointly or severally liable in tort for the same injury to persons or property....' (42 Pa.C.S. § 8322). The statutory language does not limit the right of contribution to tortfeasors who have been guilty of negligence. Contribution is available whenever two more more persons are jointly or severally liable in tort, irrespective of the theory by which tort liability is imposed.

*Id.*, 355 Pa.Superior Ct. at 238, 239, 513 A.2d at 407, 408.

Allowing a tortfeasor found strictly liable to recover contribution from a negligent joint tortfeasor merely effectuates the Uniform Act's goal of achieving equity between tortfeasors without subverting policies of strict liability. Further, we determined this result is not in conflict with policy considerations which support strict liability for defective products. In discussing the purpose to be served by strict products liability, we said:

Strict liability was intended to benefit injured consumers. It was designed to enhance the consumer-plaintiff's chances of recovery by eliminating the burden of proving the manufacturer's negligence. Strict liability was based upon a policy determination that, as between an innocent consumer and a manufacturer of a defective product, the manufacturer should bear the loss. The focus of strict liability, therefore, must be upon the relationship existing between the plaintiff-consumer and the defendant-manufacturer. [Citations omitted.]

*Id.*, 355 Pa.Superior Ct. at 241, 513 A.2d at 409.

Against the considerations behind strict products liability, we examined the aim of the Uniform Act:

The focus of the Uniform Contribution Among Tortfeasors Act, on the other hand, is upon the relationship between tortfeasors after a determination has been made that they are jointly liable for the plaintiff's injury. Thus, it is only after plaintiff's loss has been assessed against joint tortfeasors and the policy goals of strict liaiblity have been satisfied that the Act achieves significance. It then seeks to achieve an equitable apportion-

ment of that loss among all tortfeasors who have contributed to the loss.

*Id.*

Thus this court decided that the Uniform Act may properly be applied to effectuate contribution between joint tortfeasors, even where one tortfeasor is adjudged liable of negligence and the other of strict products liability.

That issue having been previously decided by this Court, we find here that appellant may seek contribution from appellee, since both have been determined by the court below to be liable in tort for the same injury to the plaintiff.

We are left with the final determination which has previously not been decided by an appellate court in this state; that is, whether in assessing contribution between a negligent and a strict liability tortfeasor, apportionment should be made on a *pro rata*[5] or comparative percentage basis.

As we stated earlier, contribution is based on equitable principles. It would appear to be less than equitable to require a fifty-fifty apportionment when the facts, as determined by a jury, clearly established that one of the joint tortfeasors had greater responsibility for causing the harm than the other. Appellee refers to the dissent by Wieand, J., in *Dambacher v. Mallis,* 336 Pa. Super. 22, 485 A.2d 408 (1984), and a statement in *Pachesky v. Getz,* 353 Pa.Super. 505, 510 A.2d 776 (1986) to bolster its argument that by enacting the Comparative Act in 1976, Pennsylvania adopted a system of comparative fault apportionment. *Pachesky* is not relevant as it deals purely with negligence and contributory negligence between a plaintiff and defendant; in *Dambacher,* the majority never reaches the issue.

In light of our discussion, it appears most appropriate to view this matter as one of *comparative contribution* once joint liability has been ascertained. As we found earlier, *Svetz* stands for the principle that parties found liable

---

**5.** *Pro rata* has generally been interpreted to mean division proportionately in accordance with the number of tortfeasors. The theory is explained in comment h to the Restatement, Torts 2d 886A. *See* pages 589–592, *infra.*

under theories of negligence and others liable under theories of strict liability may be joint tortfeasors and one may obtain contribution from the other. While *Svetz* and *Rabatin v. Columbus Lines Inc.*, 790 F.2d 22 (3d Cir.1986) hold that the Uniform Act was applicable, neither decides the issue of apportionment.

From the enactment of the Comparative Act, we can assume the legislature intended both a move away from the common law restrictions imposed by the doctrine of contributory negligence as it applied to plaintiff and tortfeasor, as well as contribution between joint tortfeasors. While we see limitations in applying the Comparative Act under the facts of this case as discussed above, we do not believe the same strictures apply to the Uniform Act. As between joint tortfeasors, no damage is done to the expressed doctrine of comparative negligence and the distinct doctrine of strict liability in applying a concept of comparative contribution as founded on a factual determination of percentage liability. It is difficult to express a concept which has so many similarities to comparative negligence that it appears to be a play on words with differences only in semantics. However, we cannot ignore the clear legislative mandate as expressed in the language of the Comparative Act, and the equally clear distinctions between "negligence" and "strict liability" expressed by our Supreme Court. *See Lewis, Azzarello* and *Berkebile, supra.* Since *Svetz* permits the finding of contribution between negligent and strict liability tortfeasors, there appears to be no impediment to percentage contribution if permitted by the Uniform Act. This does not conflict with *Lewis, Azzarello* and *Berkebile,* as they govern the relationship between a plaintiff and a tortfeasor, and not that between joint tortfeasors. The problem as to when and how the percentage apportionment shall be determined is rather one of procedure and practice.

The Uniform Act speaks of liability in two respects—common liability and pro rata share (*see* note 4, *supra,* and 42 Pa.C.S.A. § 8324(b), *supra*). Common liability would appear to mean the total responsibility to the plaintiff on the

part of both tortfeasors regardless of the manner of apportionment and would require that each be held jointly and severally liable. This would likely be the case where the injury was indivisible and the tortfeasor's negligence was a substantial factor in causing the harm, even if another's actions contributed to the incident. The second concept of liability contained therein is pro rata share, which necessarily means that contribution must be apportioned according to the equitable share of responsibility for the harm attributable to each.

Restatement, Torts 2d 886A, Contribution Among Tortfeasors, provides:

.    .    .    .    .

(2) The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share. No tortfeasor can be required to make contribution beyond his own equitable share of the liability.

Comment h to that section states:

*Method of apportionment.* Subsection (2) provides that contribution is determined according to the 'equitable shares' of the obligation of the parties liable. There are two recognized methods for assessing the equitable shares of the joint tortfeasors.

The first method, still followed by a majority of the courts, derives from contribution among sureties and the maxim that "equality is equity," and provides that the tortfeasors who are liable will end by paying equal shares. Thus, if A, B and C are all liable to the plaintiff for the same harm and A discharges the liability of both by paying $12,000, he will have a right of contribution against B for $4,000 and against C for the same amount. This is sometimes called pro-rata contribution. It is simpler to administer and requires a holding of what parties had fault contributing to the injury.

The second method, followed by a growing number of states, provides that contribution is based according to the comparative fault of the tortfeasors. Thus, if A, B and C are all liable to the plaintiff for the same harm and the plaintiff recovers $12,000 from A, A may maintain an action for contribution against B and C; if the court assesses A's negligence at 50%, B's at 30% and C's at 20%, A can recover $4,000 from B and $2,000 from C. This method seems fairer and more equitable but administration is somewhat more difficult, since percentages of fault must be ascertained. It fits particularly in a state that has adopted the rule of comparative negligence and is, indeed, almost required for the effective administration of that rule, so that the negligence of the plaintiff can also be apportioned into the total amount of negligence of all the parties. It is sometimes called comparative contribution.

The second method suggested in Comment h appears particularly appropriate here in light of the facts of the case. As Judge Rodgers stated in his Opinion:

The question remains as to whether such contribution shall be on an equal or a comparative basis. It seems clear that comparative apportionment achieves a fairer and more equitable result.

For example, in the case at bar, there was evidence that during the three years prior to the plaintiff's injuries, about 175 to 200 chairs, being used in the dining room of the restaurant by Stevens, either collapsed under patrons, or had been discovered by Stevens to be wobbly and unstable; and only those chairs had been repaired; that in May of 1980, two patrons of Stevens' restaurant had suffered personal injury by reason of chair collapse, and on July 26, 1980, four days before Mr. McMeekin's injuries, another patron had suffered injury for the same reason.

Only after the plaintiff suffered injury were all of the defective chairs sent out for repair by Stevens, which was accomplished in September of 1980, at a cost of about

$3.00 per chair. Evidence was presented that the manufacturer, the additional defendant, Douglas, had made and sold these chairs with defective welds, but Douglas had also presented evidence that they had manufactured many thousands of the same type of chair, and this was the first claim that the Douglas chair had caused any personal injury.

(Slip Op., Rodgers, J., 9/24/86, p. 9.)

■ This factual scenario, presented to a jury, would clearly permit a finding of shared responsibility and would also provide a basis for establishing a percentage apportionment of liability. However, for reasons discussed below, we find that the charge presented to the jury by the trial court as to liability, while couched in terms of fault rather than negligence, was error and to enable a jury in this proceeding to determine a percentage degree of responsibility for contribution purposes would require a somewhat different approach. The jury should not be asked to consider the percentage of liability or fault at the close of the evidence as its primary function is to determine the liability of the negligent tortfeasor and the liability of the strict liability tortfeasor separate from each other and on two distinctly different theories. Once the jury determines if one or both parties are at fault on the separate theories, it must determine the common liability or total damages to the plaintiff. In this fashion, the jury will not confuse a trial on the respective liabilities of the tortfeasors with the right of contribution, which is a clear and distinct cause of action. *See Puller v. Puller*, 380 Pa. 219, 110 A.2d 175 (1955). As we stated earlier, the problem which we must resolve procedurally is the manner in which we may reach the issue of percentage share for contribution purposes before there has been a "discharge of the common liability or [one tortfeasor] has paid more than his pro rata share thereof" (42 Pa.C.S.A. § 8324(b)). It would be wasteful of judicial time and resources to require a second trial on the issue of percentage of contribution, and more difficult to make that determination at a later time, even if this was not

done until after settlement or payment and at the time of the action for contribution. The procedure utilized by the court to charge the jury on comparative liability at the close of the evidence is compatible with the comparative negligence theory and statute but is inappropriate to the contribution theory which we have adopted. Contribution may be involved only after discharge and not as part of the proceeding to establish liability.

We believe it would be permissible for the court, after a finding of liability against the joint tortfeasors, and a determination of the amount in damages on the common liability, to have the jury determine by means of special interrogatories, the percentage share of each to satisfy counts in the complaint requesting contributions. In this manner, the court could then have the jury determine, as to the common liability, what percentage was attributable to a defect in the product and what percentage was attributable to the negligence of the joint tortfeasor. Throughout, the clear distinction between the negligent tortfeasor and strict liability tortfeasor will have been maintained. This would appear to be necessary to proceed to enforcement of the right of contribution permitted by law. As provided in the Pennsylvania Trial Guide:

### § 24.16. Enforcement of the Right of Contribution

A tortfeasor has a choice of several methods by which he can enforce his right of contribution against a joint tortfeasor. If the tortfeasor is a defendant in an action in which the joint tortfeasor is a co-defendant, he can plead over against the joint tortfeasor, asserting the right of contribution. If the tortfeasor is a defendant in an action in which the joint tortfeasor is either a plaintiff or is not a party at all, he can join the joint tortfeasor as an additional defendant, asserting the right of contribution. Or the tortfeasor may seek contribution by a separate action against the joint tortfeasor, which action sounds in assumpsit. (Footnotes omitted.)

S. Feldman, *Pennsylvania Trial Guide*, Revision, Volume 2 at 16 (1978). Also, the defendant paying the judgment may

have the judgment marked to his use, so as to enforce contribution from the other tortfeasor. *See Puller* at 220, n. *, 110 A.2d at 176 n. *. While somewhat more involved than the procedure utilized by the lower court, it appears unavoidable considering the restrictions contained in both the Comparative Act and the Uniform Act. The Annotation and note on *Contribution,* 53 A.L.R.3d 184, discuss numerous approaches and variations to this problem but do not provide a solution that we believe applicable here or under Pennsylvania law.

■ In view of the fact that the parties have stipulated to liability, and the issue we must resolve is the percentage each is required to pay as between a 30–70 percentage or 50–50 percentage, there need be no remand for further proceedings. We have held that Pennsylvania has moved to a doctrine of comparative contribution, derivative of legislative adoption of Comparative Negligence. law; that the Uniform Contribution Act permits contribution as between a negligent tortfeasor and a strict liability tortfeasor; and that uniformity and consistency require that comparative contribution be applied in determining the pro rata share of each. We, therefore, find that the 30 per cent attributable to Douglas is the amount of its share and the 70 per cent attributable to Stevens is the amount of its share.

Order of the lower court is affirmed.