625 A.2d 650

**Russell N. BALL and Ethel F. Ball**

**v.**

**JOHNS–MANVILLE CORP., Johns–Manville Sales Corp., Raybestos Manhattan, Inc., Forty–Eight Insulation, Inc., Nicolet, Inc., Pittsburg Corning Corp., GAF Corp., Owens Illinois Glass Co., Unarco Industries, Inc., H.K. Porter Co., J.P. Stevens Co., Eagle Picher Industries, Garlock, Inc., U.S. Rubber Co. and Uni–Royal Inc., Celotex Corp., Pacor, Inc., Amatex Corp., Asbestos Textile Institute, Owens–Corning Fiberglas Corp., Asten Hill Manufacturing Co., Keasbey Mattison Co., and Keene Corp.**

**Appeal of OWENS–ILLINOIS INC., Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 25, 1992.

Filed April 20, 1993.

Reargument Denied June 18, 1993.

370

372

Kimberly Waldron, NJ, for appellant.

Faithe Moore, Philadelphia, for appellee.

Before BECK, JOHNSON and HOFFMAN, JJ.

BECK, Judge:

This appeal raises issues relating to the quantum of evidence necessary to establish product nexus in an asbestos case. These issues arise both in the context of the plaintiff's case against non-settled defendants and in the context of the non-settling defendants' cross-claims against other defendants who either settled, filed for bankruptcy or were dismissed on summary judgment prior to trial.

Plaintiffs-appellees, Russell Ball and his wife Ethel, brought this action in the Court of Common Pleas of Philadelphia County claiming damages due to Mr. Ball's occupational exposure to asbestos. Appellant Owens–Illinois Glass Company ("Owens") was named as a defendant along with 21 other defendants who allegedly manufactured, distributed or supplied asbestos-containing products to which Mr. Ball was exposed. Owens asserted cross-claims against all other defendants.

The Balls' case was consolidated for trial with three other cases in which damages for occupational exposure to asbestos were also sought. A jury trial commenced on January 28, 1991 before the Honorable Lawrence Prattis. Owens and Keene Corporation were the only defendants remaining at the time of trial, all others having either settled, declared bankruptcy or been dismissed on summary judgment.

At the close of plaintiffs' case, the trial court denied Owens' motion for nonsuit based on plaintiffs' failure to establish a

product nexus under the standard enunciated in *Eckenrod v. GAF Corp.*, 375 Pa.Super. 187, 544 A.2d 50, *alloc. denied*, 520 Pa. 605, 553 A.2d 968 (1988). The trial court also denied Owens' motion for nonsuit on Mrs. Ball's loss of consortium claim. At the close of Owens' case, Owens renewed these motions, which were again denied.

Owens also requested that the trial court pose special interrogatories to the jury in which the jury would be asked to find that all the originally named defendants and several other parties who had not been sued had contributed to Mr. Ball's injuries and, further, would be asked to apportion liability among those entities. The trial court refused to submit these interrogatories to the jury. As to the bankrupt entities, the trial court decided that no findings could be made against them without violating the stay of proceedings imposed by the bankruptcy court. As to the others, the court found insufficient evidence to support the submission of their names to the jury and to permit apportionment of liability. Only Owens and Keene were placed on the verdict sheet.

The jury returned a verdict in favor of Mr. Ball in the amount of $100,000 and in favor of Mrs. Ball in the amount of $20,000 against both Owens and Keene. The trial court thereafter denied Owens' and Keene's post-trial motions and entered judgment on the verdict, after having added delay damages.[1]

Mr. Ball's claim for damages arose out of his employment at the Philadelphia Naval Shipyard. Mr. Ball was employed at the shipyard from 1951 to 1952 and from 1957 to 1982. In that period, he was employed as a pipe fitter and supervisor of other pipe fitters. Mr. Ball testified that while he was employed at the shipyard, he was continuously exposed to asbestos dust generated by a great variety of asbestos containing products, either through his own use of such products or through working in the same confined areas aboard ships, such as the fire or engine rooms, where other employees, such

---

1. Although Keene originally appealed the judgment against it, it thereafter settled with the Balls and discontinued its appeal. Only Owens' appeal remains before this court.

as pipe coverers, were using such products. Mr. Ball specifically identified six asbestos products, or their manufacturers, to which he was exposed: Unibestos, Owens–Illinois, Armstrong, Flexitallic, Consalco and Garlock. He was able to identify these products because he saw them come into his work area in their original containers which bore the name of the product. Mr. Ball also stated that he was exposed to dust from many other such products, although he could not specifically identify them, and that none of the products he was exposed to contained warnings of the health hazards they posed.

In addition to Mr. Ball's testimony, the trial court also heard the testimony of Mr. George Watts. Mr. Watts was employed at the Philadelphia Naval Shipyard from 1940 to 1974. He was initially employed as a pipe coverer and, beginning in 1961, was the supervisor of all pipe coverers at the shipyard. He confirmed Mr. Ball's testimony that pipe coverers and pipe fitters worked in very close proximity, that they worked with asbestos containing materials and that their work generated large amounts of asbestos dust. He identified Mr. Ball as a friend and co-worker and confirmed that Mr. Ball had worked in the areas of various ships where dust-generating asbestos work was continuously performed.

Mr. Watts was able to identify a long list of manufacturers of dust producing asbestos products that were interchangeably used at the shipyard in the areas where Mr. Ball worked. Mr. Watts identified the following:

Armstrong

Baldwin–Ehret–Hill (later became Keene Corp.)

Carey (later became Celotex)

Keasbey–Mattison (later became Nicolet)

Johns–Manville Corp.

Philadelphia Asbestos

Unarco (later became Pittsburgh Corning; manufacturer of Unibestos)

Owens–Illinois Glass Co. (later became Owens–Corning)

Fibreboard

GAF

H.K. Porter

J.P. Stevens

Eagle Picher

Garlock

Flexitallic

Consalco

Raybestos–Manhattan

U.S. Rubber/Uniroyal

Asten Hill

Amatex

Forty–Eight Insulation, Inc.

Mr. Ball also presented the testimony of medical witnesses to establish that he suffered from asbestos-related pleural thickening which was a contributing factor in his shortness of breath.

Appellant Owens–Illinois raises the following issues:

1. Whether the trial court erred in denying defendant's motions for non-suit and directed verdict based upon plaintiff's failure to prove the required product nexus.

2. Whether the trial court erred by resolving the factual issue of the joint tortfeasor status of other parties and denying defendant's request to charge the jury to determine the comparative liability of all parties listed on defendant's proposed verdict sheets.

3. Whether the trial court erred in submitting the loss of consortium claim to the jury because the record is devoid of any evidence to support the claim.

In reviewing these allegations of error, we note that we are bound by two different standards of review. Issues one and three obviously are directed at the trial court's denial of judgment n.o.v. in favor of appellant on the ground of insufficient evidence. In reviewing a denial of judgment n.o.v. based on the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict winner, granting that party the benefit of all reasonable inferences. *Moure v. Raeuchle*, 529 Pa. 394, 604 A.2d 1003 (1992); *Cohen v. Albert*

*Einstein Medical Center,* 405 Pa.Super. 392, 398, 592 A.2d 720, 723 (1991). In contrast, issue two alleges error in the trial court's failure to grant appellant a new trial at which the appellant's proposed special interrogatories and charge on apportionment would be given to the jury. In reviewing a refusal to grant a new trial, we determine whether the trial court committed an error of law or abused its discretion in a manner that controlled the outcome of the case. *Beary v. Container General Corp.,* 368 Pa.Super. 61, 68, 533 A.2d 716, 719 (1987), *alloc. denied,* 520 Pa. 586, 551 A.2d 213 (1988).

■ We begin with appellant's challenge to the sufficiency of the evidence supporting Mr. Ball's claim for injuries due to exposure to appellant's products. Much has been written by this court and others regarding the quantum of evidence necessary to support a claim for injuries due to exposure to a specific asbestos containing product. An en banc panel of this court has most recently addressed the legal standard applicable to this question in *Ottavio v. Fibreboard,* 421 Pa.Super. 284, 617 A.2d 1296 (1992) (en banc), as follows:

> In order for a defendant to be held liable in a products liability action, whether under a theory of negligence or strict liability, plaintiff must establish that the injuries were caused by a product of the particular manufacturer or supplier. *Eckenrod v. GAF Corp.,* 375 Pa.Super. 187, 190–191, 544 A.2d 50, 52 (1988), *allocatur denied* 520 Pa. 605, 553 A.2d 968 (1988), citing *Berkabile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975). See also: *Lilley v. Johns Manville Corp.,* 408 Pa.Super. 83, 596 A.2d 203 (1991); *Bushless v. GAF Corp.,* 401 Pa.Super. 351, 585 A.2d 496 (1990); *Bilk v. Abbotts Dairies, Inc.,* 147 Pa.Super. 39, 23 A.2d 342 (1941). In an asbestos action this requires that a plaintiff establish more than the mere presence of asbestos in the workplace. Plaintiff must prove that he worked in the vicinity of the products' use and that, hence, he inhaled asbestos fibers shed by the product of a specific manufacturer. *Lilley v. Johns Manville Corp., supra; Samarin v. GAF Corp.,* 391 Pa.Super. 340, 571 A.2d 398

(1989); *Eckenrod v. GAF Corp., supra*, citing *Pongrac v. Consolidated Rail Corp.*, 632 F.Supp. 126 (E.D.Pa.1985). *Id.* at 287, 617 A.2d at 1297–98.

Appellant contends that Mr. Ball did not meet this standard of proof and, therefore, did not establish that his injuries were the result of exposure to appellant's asbestos products. Specifically, appellant argues that Mr. Ball failed to present evidence of how often he used or worked in the vicinity of appellant's products and failed to establish that he breathed asbestos fiber or dust from appellant's products to such an extent that they were a substantial contributing factor in his asbestos related disease.

We have carefully reviewed the evidence in this regard. Our review has led us to the conclusion that there was clearly sufficient evidence to support the jury's verdict. As the summary of the testimony set forth above indicates, Mr. Ball specifically testified that he worked in the fire and engine rooms of numerous ships at the shipyard and that he and other workers in those rooms were engaged in work involving the cutting and shaping of asbestos containing pipe covering materials and involving the use of asbestos containing cement. He testified that this work caused the release of asbestos dust into the air, which he continuously breathed. Moreover, he specifically identified appellant as one of the manufacturers whose asbestos products he remembers being used in his workplace. He stated that he remembered seeing appellant's products about one-half of the time he worked at the shipyard. Mr. Watts also testified that he knew that Mr. Ball worked in the fire and engine rooms where asbestos pipe covering materials and cement were in use, that the use of these products released asbestos dust into the air Mr. Ball was breathing, and that asbestos containing pipe covering manufactured by appellant was one of the pipe covering products used on the ships where Mr. Ball worked.

Somewhat less than this amount of evidence was specifically found to be sufficient in *Ottavio, supra*. Mr. Ottavio was also employed at the Philadelphia Naval Shipyard and worked in the fire and engine rooms aboard various ships. Mr. Ottavio

testified that he had been exposed to asbestos dust generated by the work of other employees in those areas. Unlike Mr. Ball, Mr. Ottavio was unable to identify any products or manufacturers of the asbestos products that had been used in his presence. However, as in this case, Mr. Watts testified in the *Ottavio* case and confirmed that Mr. Ottavio had worked in the areas of various ships where the defendant Fibreboard's asbestos products had been used. The *Ottavio* court held that this evidence was sufficient to support the jury's verdict in favor of Mr. Ottavio and we reach the same conclusion here.

In the instant case, Mr. Ball himself was able to identify appellant as one of the manufacturers whose asbestos products he saw being used in the areas where he worked. He also was able to state that these products were present about one-half of the time he worked at the shipyard. His testimony was confirmed by Mr. Watts. Nothing further is required. The trial court did not err in refusing to grant judgment n.o.v. in appellant's favor on this ground.

[4] We next turn to appellant's third issue, regarding Mrs. Ball's loss of consortium claim, since we can summarily dispose of this allegation of error. Appellant contends that the trial court erred in denying judgment n.o.v. on Mrs. Ball's loss of consortium claim since there was allegedly no evidence that Mrs. Ball suffered any loss as a result of Mr. Ball's asbestos related disease. We recognize that Mrs. Ball did not testify because she is herself severely disabled by cancer. Nevertheless, we find that this jury could reasonably have concluded from the whole of the testimony of record that Mr. Ball did suffer from shortness of breath as a result of his pleural thickening and that this inhibited his normal activities, including his ability to provide companionship and services to his seriously ill wife. We find no error in the trial court's refusal to grant judgment n.o.v. on this ground.

We now proceed to appellant's second claim of error, regarding the trial court's refusal to submit to the jury special interrogatories regarding the causal fault of all of the original defendants and of certain other entities who were never defendants. The trial court refused to ask the jury to deter-

mine whether these parties contributed to Mr. Ball's injuries for a variety of reasons. As to the parties who had never been sued, the court determined that the jury had no authority to enter a finding against them. As to those original defendants who had entered bankruptcy prior to trial, the court found that to allow the jury to make a finding of causal responsibility against these parties would be a violation of the bankruptcy court's stay of proceedings against them. As to the remaining original defendants, who had either settled with Mr. Ball prior to trial or who had been dismissed on summary judgment, the trial court determined that there was insufficient evidence to permit the jury to make any finding as to them.

We note at the outset that we have been greatly inhibited in our review of this issue by the failure of both parties to argue the issue with sufficient specificity. Neither party has classified the parties that appellant sought to have included in the jury's verdict by indicating which of those parties are now bankrupt, which entered into settlements with appellee prior to trial and which were dismissed from the case prior to trial on summary judgment. Nor has either of the parties specifically analyzed the evidence of record pertinent to each of these parties. This failure to inform the court of the specific facts and procedural history pertinent to the issue presented has forced us to attempt to piece together the necessary information from a record which is far from clear. We caution these parties and others who appear before this court in future that it is *their* duty to provide this court with a complete record and with all of the information and analysis necessary to our decision-making process.

From our review of the record, it would appear that the following are the facts and procedural history pertinent to this issue. Mr. Ball originally sued the following parties:

Owens–Illinois Glass Co.
Keene Corp.
Johns Manville Corporation and Johns Manville Sales Corp.
Raybestos–Manhattan
Forty–Eight Insulation, Inc.

Nicolet, Inc.

Pittsburgh Corning Corp.

GAF Corp.

Unarco Industries, Inc.

H.K. Porter Co.

J.P. Stevens Co.

Eagle Picher Industries

Garlock, Inc.

U.S. Rubber Co. and Uni–Royal, Inc.

Celotex Corp.

Pacor, Inc.

Amatex Corp.

Asbestos Textile Institute

Owens–Corning Fiberglas Corp.

Asten Hill Manufacturing Co.

Keasbey Mattison Co.

Prior to trial, summary judgment appears to have been granted in favor of both J.P. Stevens and Asten Hill. Moreover, Mr. Ball severed Johns Manville Corp. and Johns Manville Sales Corp., Unarco, Amatex and Forty–Eight Insulation, stating that they had entered bankruptcy. It would also appear, although it is not entirely clear from the record before us, that Keasbey Mattison Co. and Nicolet, Inc. (apparently related or successor companies), Celotex, Raybestos–Manhattan, Pacor, and possibly Eagle Picher and H.K. Porter, are also now in bankruptcy.

On the other hand, in Mr. Ball's pre-trial statement, he represented that he had reached settlements with Raymark (apparently Raybestos–Manhattan), GAF, Garlock, Uniroyal/U.S. Rubber, Owens–Corning, and the "Manville Fund." He also stated that the remaining defendants were appellant, i.e. Owens–Illinois, Keene Corp., Pittsburgh Corning, Eagle Picher and H.K. Porter. However, when the trial actually began counsel for Mr. Ball represented that the only remaining defendants were appellant, i.e. Owens–Illinois, and Keene Corp. Thus, it would appear that Pittsburgh Corning, Eagle

Picher and H.K. Porter had either settled with Mr. Ball or entered bankruptcy by that time.

We cannot ascertain why the one remaining original defendant, Asbestos Textile Institute, did not participate in the trial, because neither party has informed us as to the facts in this regard, and we cannot ascertain them with any certainty from the record. Finally, we note that after the verdict in this matter was entered, Mr. Ball also settled with Keene Corp.

At the close of the evidence, appellant Owens–Illinois submitted proposed special interrogatories for submission to the jury. Among these proposed interrogatories was the following:

5. Was occupational exposure to the asbestos-containing products of the companies listed below a substantial contributing factor in plaintiff's development of an asbestos-related disease or injury?

Amatex Corporation [bankrupt]

Asbestos Textile Institute [settled?]

Asten–Hill Manufacturing Co. [dismissed on summary judgment]

Celotex–Philip Carey [Celotex bankrupt; Philip–Carey not a defendant]

Eagle–Picher Industries [bankrupt?]

Forty–Eight Insulation [bankrupt]

GAF Corporation [settled]

Garlock, Inc. [settled]

H.K. Porter Co., Inc./So. Textile [H.K. Porter settled or bankrupt; So. Textile not a defendant]

Johns–Manville Corp. [bankrupt]

Keasby [sic] Mattison/Nicolet, Inc. [bankrupt?]

Keene Corp./Ehret/Baldwin–Ehret–Hill [Keene participated at trial; Ehret/Baldwin–Ehret–Hill not a defendant]

Owens–Corning Fiberglas Corp. [settled]

Owens–Illinois, Inc. [participated at trial]

Pacor, Inc./Phila. Asbestos Corp. [Pacor bankrupt; Phila. Asbestos not a defendant]

Pittsburgh Corning Corp./Unarco [Pittsburgh–Corning settled?; Unarco bankrupt]

Raybestos–Manhattan/Raymark [Raybestos–Manhattan bankrupt; Raymark not a defendant]

U.S. Rubber Company/Uniroyal [settled]

As the bracketed material we have added to this list indicates, the list included numerous defendants who had settled, were dismissed on summary judgment or were bankrupt. Appellant also requested that the trial court submit another special interrogatory, listing the same parties, and requesting the jury to state the percentage of the total liability to Mr. Ball for which each party was responsible. In connection with this request, appellant also asked the trial court to charge the jury as follows:

If you find that some or all of the defendants are liable to the plaintiff, your award of damages should be divided between the defendants in proportion to their relative degrees of causal liability; that is, where recovery is allowed against more than one defendant, each defendant should be liable for that portion of the total dollar amount awarded as damages in the direct proportion to its causal responsibility. If you find that more than one defendant is liable, you should apportion the relative liability among those defendants you find liable. The liability of all of the defendants would, of course, total 100 percent (100%), and you should apportion a percentage of that liability to each defendant you find liable.

As we have indicated above, the trial court refused to submit the proposed interrogatories or to charge the jury on apportionment, and the jury ultimately returned a verdict only against appellant and Keene, who later settled with Mr. Ball.

Although we do not agree with appellant that all of the names listed on the proposed special interrogatories should have gone to the jury, and we do not agree that an apportionment charge should have been given, we do agree that the jury should have been permitted to decide if certain of the listed defendants had contributed to Mr. Ball's injuries.

In analyzing these questions, we have divided the parties on the foregoing list into four categories: 1. parties who were not sued by Mr. Ball and who were never joined as additional defendants by any original defendant; 2. parties who are now bankrupt; 3. parties dismissed on summary judgment; and 4. parties who were original defendants who settled with Mr. Ball. We will first discuss the law generally applicable to the issue posed and then determine the propriety of submitting each category of parties to the jury.

The Pennsylvania Comparative Negligence Act, 42 Pa. C.S.A. § 7102 (1982), in subsection (b), states:

Recovery against joint defendant; contribution.—

Where recovery is allowed against more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed. The plaintiff may recover the full amount of the allowed recovery from any defendant against whom the plaintiff is not barred from recovery. Any defendant who is so compelled to pay more than his percentage share may seek contribution.

In addition, the Pennsylvania Uniform Contribution Among Tort-feasors Act, 42 Pa.C.S.A. § 8321 et seq. (1982), states, in pertinent part:

§ 8322. Definition

As used in this subchapter "joint tort-feasors" means two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them.

§ 8324. Right of contribution

(a) General rule.—The right of contribution exists among joint tort-feasors.

(b) Payment required.—A joint tort-feasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.

(c) Effect of settlement.—A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement.

§ 8326. Effect of release as to other tort-feasors

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides, but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides the total claim shall be reduced if greater than the consideration paid.

Disputes concerning the proper construction and application of these statutory provisions have engendered numerous opinions by both this court and the Supreme Court. Several overriding principles emerge from these decisions. First, it is clear that the Comparative Negligence Act requires apportionment of liability among defendants based on their relative degree of causal fault. *See Ottavio, supra; Embrey v. Borough of West Mifflin,* 257 Pa.Super. 168, 390 A.2d 765 (1978). Although the Comparative Negligence Act has been held to apply only to actions exclusively grounded in negligence, the Uniform Contribution Act has been held to allow apportionment among joint tortfeasors in actions like the instant one where both strict liability and negligence are alleged. *McMeekin v. Harry M. Stevens, Inc.,* 365 Pa.Super. 580, 530 A.2d 462 (1987), *allo. denied,* 518 Pa. 619, 541 A.2d 746 (1988); *Svetz v. Land Tool Co.,* 355 Pa.Super. 230, 513 A.2d 403 (1986), *alloc. denied,* 515 Pa. 584, 527 A.2d 544 (1987). However, as the Supreme Court's recent decision in *Walton v. Avco Corp.,* 530 Pa. 568, 610 A.2d 454 (1992), makes clear, no apportionment of liability can be made between tortfeasors who are *only* found strictly liable. As the *Walton* Court stated:

The final issue to be resolved is a determination of the proper apportionment of damages between two strictly liable tort-feasors.... Both the plaintiffs and Avco [the

settled defendant] argue that the Superior Court erred in holding that the principle of comparative fault should be employed in apportioning liability for damages between two strictly liable defendants, and claim instead that the apportionment should be made on a pro rata basis as held by the trial court.

. . . .

In a case such as this, where neither defendant was found liable under the theory of negligence, we believe it is improper to introduce concepts of fault in the damage-apportionment process. Each defendant was found wholly liable for having caused the death of the victims. Avco [the settled defendant] was liable for manufacturing the defective engine, and Hughes, for failing to warn the victims of the defect. It is impossible to determine that one was more liable than the other.

*Id.* at 582–84, 610 A.2d at 462.

Although the *Walton* court did not go on expressly to state that apportionment among strictly liable defendants must be on a pro rata basis, i.e., divided proportionately in accordance with the number of joint tortfeasors, this is clearly a necessary corollary of the *Walton* decision. Justice Papadakos, concurring in *Walton,* specifically interpreted the majority opinion in this manner, stating:

I join the majority opinion because I believe it says the following:

. . . .

III. As between and among strictly liable defendants, any defendant who has settled with plaintiffs prior to verdict has settled for its pro-rata share of the verdict and is not entitled to contribution from any other defendant found strictly liable, whether the verdict is for a greater or lesser amount than the settlement amount.

The non-settling strictly liable defendants are obligated to the plaintiffs for a pro-rata share of the verdict and are not

entitled to contribution from the settling, strictly liable defendants.

*Id.* at 584–85, 610 A.2d at 463 (Papadakos, J., concurring).

█ The instant case was submitted to the jury on both negligence and strict liability theories. Thus, under the foregoing authorities, it would appear that apportionment among the defendants on the ground of causal fault would not be barred under that portion of *Walton* that holds that such apportionment is not permissible as between purely strictly liable defendants. *See Walton, supra; McMeekin, supra.* However, in the instant case we find that apportionment on the basis of causal fault is barred on another independent ground. Here apportionment on the basis of relative causal fault was impossible because there is absolutely no evidence on which the jury might base such an apportionment. There was no evidence as to the relative amounts of asbestos dust Mr. Ball inhaled from the various asbestos containing products to which he was allegedly exposed. Under such circumstances, clearly no apportionment charge can be given since, as a matter of law, there is insufficient evidence to support a jury determination of the relative causal fault of the tortfeasors. Thus, apportionment must be made on a pro rata basis, i.e. in relation to the total number of joint tortfeasors that the jury finds contributed to the injury to the plaintiff.

The decision of a panel of this court in *Gross v. Johns–Manville Corp.*, 410 Pa.Super. 486, 600 A.2d 558 (1991), *appeal denied,* 531 Pa. 654, 613 A.2d 559 (1992), confirms this principle. *Gross* also involved a claim for damages resulting from occupational exposure to asbestos against numerous defendants. Only a few defendants proceeded to the liability phase of the trial, the others having settled or been excluded due to their intervening bankruptcy. The verdict sheet apparently did include the names of the settled defendants, but the trial court refused to instruct the jury to apportion damages among them and the non-settled defendants. The trial court found that there was insufficient evidence for the jury to base an apportionment of causal fault and that instructing the jury to do so would force it to engage in speculation and conjecture.

On appeal, two of the non-settled defendants challenged this conclusion.

This court affirmed this aspect of the trial court's decision, stating:

> We are presented with nothing which requires as a matter of law that a jury *must* be charged on the issue of comparative liability in every tort action involving more than one defendant. Had evidence been presented upon which a jury could have apportioned the comparative fault of the defendant companies such an instruction would have been appropriate.

*Id.* at 499–500, 600 A.2d at 565.

The *Gross* court went on to reject the appellants' further contention that because the *Eckenrod* standard of evidence supporting their liability had been met by plaintiff, this alone meant that sufficient evidence to support apportionment had been produced:

> *Eckenrod* requires only that the plaintiff establish the identity of the product and his exposure to the particular product before liability may be determined. That this was shown in the present case is in no way conclusive of the issue of comparative liability.

*Id.* at 503, 600 A.2d at 566–67.

In the instant case, the same principles apply with even greater force. In *Gross,* there was testimony concerning whether the presence of various asbestos products in plaintiff's workplace had been relatively large, medium or small. In contrast, in this case there was no testimony comparing the relative amounts of the various products to which Mr. Ball was exposed. Clearly, the trial court was correct in refusing to charge the jury on apportionment.

This, however, does not end our analysis. We are still left to decide whether the names of the defendants listed on appellant's special interrogatories should have been submitted to the jury to allow the jury to decide if exposure to their products had been a substantial contributing factor in Mr. Ball's development of asbestos related disease. In other

words, even though the jury could not apportion on the basis of relative degrees of causal fault, should the jury have been permitted to find that these parties' products had contributed to Mr. Ball's disease so that liability against them could be assessed on a pro rata basis, thereby reducing the share for which Owens would ultimately be liable. *See Walton, supra* (where liability is not to be apportioned on the basis of relative causal fault, it should nevertheless be apportioned on a pro rata basis).

■ Since our determination of this question differs as to each category of parties indicated above, we address each category seriatim. First, as to those parties who Owens sought to have included in the jury's verdict who had not been sued by Mr. Ball and who were never joined by any other defendant, we conclude that no finding of liability could be made against them. We are aware of no principle of Pennsylvania law that allows a jury to make a finding of liability against a party who has not been sued. In fact, as a panel of this court has recently observed:

> While some states ... [permit] the apportionment of liability among all tortfeasors, even those who have not been made parties, Pennsylvania's statute does not so provide.

*Kemper National P & C Companies and American Motorists Ins. Co. v. Smith,* 419 Pa.Super. 295, 309, 615 A.2d 372, 380 (1992).

■ Second, as to those parties who were in bankruptcy when this case was submitted to the jury, we need only refer once again to the recent en banc decision of this court in *Ottavio v. Fibreboard Corp., supra,* where we analyzed the selfsame issue. The *Ottavio* court concluded that bankrupt defendants did not have to participate in the trial, and their names should not be submitted to the jury for a finding of liability. The court opined:

> Nothing precludes the solvent manufacturers in this case from obtaining contribution from the bankrupts when (and if) they emerge from reorganization proceedings. To hold otherwise would be to require an exercise in futility, for any finding of fault against the bankrupt manufacturers would

be unenforceable under the automatic stay provisions of the Bankruptcy Code. In *Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277 (2nd Cir.1990), *cert. denied,* 497 U.S. 1057, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990), the evidence at trial established that asbestos products manufactured by Johns–Manville had been used extensively at the plaintiff's worksite. Defendant–Pittsburgh Corning argued that Johns–Manville should have been added to the list in the verdict form of potential tortfeasors. The trial court denied the request, and the Court of Appeals affirmed. The court explained:

> Pittsburgh Corning still retains the right to pursue the Manville Trust and, if it can establish liability, obtain contribution. The jury's allocation of responsibility among the companies it was permitted to consider does not preclude a pro rata reduction of the shares the jury assigned, in the event that Manville is subsequently determined to bear responsibility for some proportionate share of plaintiff's damages. . . . .

*Id.* at 284.

Finally, the bankruptcy rules seem to preclude an apportionment of liability for a party operating under the automatic stay provisions of the Bankruptcy Code.

. . . .

The above authorities adequately support the trial court's decision which refused to submit to the jury a verdict sheet including the bankrupt manufacturers of asbestos products.

*Ottavio,* 421 Pa.Super. at 294, 617 A.2d at 1301.

We reach the same conclusion here, and find that the trial court did not err in refusing to submit the names of bankrupt defendants to the jury.

 The third category of parties whose names Owens sought to have included on the verdict sheet in this case are two defendants who were dismissed from the action pre-trial on summary judgment. The record does not reveal the grounds on which summary judgment was granted in these

defendants' favor. Nor does the record indicate that Owens ever opposed the grant of summary judgment in favor of these defendants or filed a timely appeal from those judgments.

A panel of this court was faced with a similar situation in *Paparelli v. GAF Corp.*, 379 Pa.Super. 62, 549 A.2d 597 (1988). There, several defendants in an asbestos case were dismissed on summary judgment. The remaining defendants, who had never opposed entry of summary judgment in favor of the dismissed defendants, appealed the entry of summary judgment to this court. They contended that since they had filed cross-claims for contribution and indemnity against the dismissed defendants, the entry of summary judgment for those defendants improperly prevented the remaining defendants from having their cross-claims against the dismissed defendants resolved in one lawsuit. This court affirmed the grants of final summary judgment, finding that the appealing defendants had waived their right to contest those judgments by not opposing them prior to their entry. *Id.* at 68, 549 A.2d at 599–600.

Similarly, in the present case, Owens did not oppose the grant of summary judgment in favor of these two defendants. Moreover, unlike the appealing defendants in *Paparelli*, Owens did not file a timely appeal from those judgments in an attempt to preserve its right to have its contribution rights determined in this action. We, therefore, have no hesitation in deciding that Owens has foregone any right it had to include these defendants in this jury's verdict by failing either to oppose or appeal the grants of summary judgment in these defendants' favor.

Only one category of parties remains—that is, those original defendants who settled with Mr. Ball prior to trial and who were not bankrupt when the case was submitted to the jury. As to these defendants, the trial court determined that there was insufficient evidence to submit any of their names to the jury.

Based on our review of the record, the parties at issue are Asbestos Textile Institute, GAF Corp., Garlock, Inc., Owens–Corning Fiberglas Corp., Pittsburgh–Corning Corp.

and U.S. Rubber/Uniroyal. As to certain of these parties, the trial court was clearly correct. For example, no evidence was produced at trial regarding Mr. Ball's exposure to any product manufactured by Asbestos Textile Institute and Mr. Ball himself testified that he had never heard of this entity. Clearly, there was insufficient evidence to submit this entity's name to the jury for a finding of liability. Equally, we find there was insufficient evidence to warrant the submission of U.S. Rubber/Uniroyal to the jury for a finding of liability. As to this defendant, Mr. Ball offered no testimony, and Mr. Watts could only say that he remembered that this manufacturer had supplied products to the shipyard, but he did not specify what products had been supplied. The trial court did not err in refusing to submit the names of these parties to the jury, since there was no evidence on which a jury could reasonably base a finding of liability as to them.

As to the remaining settled defendants, however, we must differ with the conclusion of the trial court. As to Pittsburgh Corning Corp., our review of the testimony reveals that Mr. Ball testified that he specifically recalled being exposed to Unibestos, which Mr. Watts later identified as being an asbestos containing product which was manufactured by Pittsburgh–Corning and which Mr. Watts also recalled being used at the shipyard. As to GAF, Mr. Watts testified that he was aware of GAF asbestos containing products, apparently pipe covering insulation, having been used on ships where Mr. Ball had continuously worked. As to Owens Corning Fiberglas, Mr. Watts testified that certain asbestos products earlier made by appellant Owens were later manufactured by Owens Corning. Both Mr. Ball and Mr. Watts identified Garlock as a manufacturer of asbestos containing gaskets that had been used in Mr. Ball's proximity at the shipyard.

We see no relevant distinction between this evidence and that which the trial court accepted as sufficient as to Owens and as to Keene, the other defendant who participated at trial and whose name was submitted to the jury. This evidence established that these defendants manufactured asbestos containing products which were continuously and interchangeably

used at the shipyard in the areas of various ships where Mr. Ball worked. This is clearly sufficient under the *Eckenrod* standard to warrant submission of their names to the jury for a finding as to whether these defendants contributed to Mr. Ball's asbestos disease.[2]

The order of the trial court is affirmed in part and reversed in part. The case is remanded for a new trial limited to the issue of whether those defendants indicated above who settled with plaintiff pre-trial and as to whom there was sufficient evidence of plaintiff's exposure to their products to warrant submission of their names to the jury actually contributed to plaintiff's asbestos related disease.[3]

JOHNSON, J., files a concurring and dissenting opinion.

JOHNSON, Judge, concurring and dissenting.

I join in the conclusion of my colleagues that there was clearly sufficient evidence to support the jury's verdict. I also

2. We recognize that as to appellant Owens, there was additional evidence of the presence of their asbestos products at the shipyard in the years Mr. Ball worked there and of the asbestos content of those products. This evidence was in the form of answers to interrogatories in which Owens identified its asbestos containing products and admitted that they were sold to the shipyard in certain of the relevant years. Appellees contend that the absence of similar evidence as to the settled defendants bars the submission of their names to the jury. We disagree. We note that in *Ottavio, supra,* this court determined that the plaintiff had sufficiently established his exposure to asbestos products made by certain manufacturers simply through his own testimony and that of Mr. Watts. There is no mention in the *Ottavio* opinion of other evidence in the form of answers to interrogatories or otherwise in which the defendants provided information concerning the asbestos content of their products. Thus, we can only conclude that such evidence is not a prerequisite to a finding of liability and that the testimony of the injured plaintiff himself, or of a co-worker like Mr. Watts, that the products in question contained asbestos and were present in the plaintiff's work area, is sufficient to allow a jury to conclude that the plaintiff was exposed to and injured by that defendant's products.

3. As further relief, Owens requests that the trial court be instructed to mold the verdict to reflect plaintiffs' post-trial settlement with Keene Corporation, as to whom the jury did make a finding of liability, and to reflect the consequent partial satisfaction of the judgment. We find this request entirely appropriate, and instruct the trial court to mold the verdict accordingly.

agree that the distinguished trial court, the Honorable Lawrence Prattis, committed no error in refusing to grant judgment notwithstanding the verdict on the loss of consortium claim of the plaintiff's wife.

I also agree that the appellant, Owens–Illinois Glass Company (Owens–Illinois), has completely failed to inform this court of the specific facts and procedural history pertinent to the only other issue on this appeal: whether Judge Prattis erred in denying Owens–Illinois' request that the jury be charged on comparative liability.

The majority asserts that they cannot accept Owens–Illinois' contention that all of the names of defendants listed on the special interrogatories should have gone to the jury. Majority at 657. The majority further declares that Judge Prattis was "clearly ... correct in refusing to charge the jury on apportionment." *Id.* at 659. I agree with both of these conclusions of my colleagues. I part company from my colleagues as they "attempt to piece together the necessary information [to make Owens–Illinois' argument] from a record which is far from clear." *Id.* at 655.

The majority is correct when it asserts that it is the duty of the appellant to provide this court with a complete record and with all the information and analysis necessary to our decision-making process. Pennsylvania Rule of Appellate Procedure 2117(a)(4) requires that the Statement of the Case in appellant's brief contain:

> (4) A closely condensed chronological statement.... of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found.

Owens–Illinois has not complied with this rule, in terms of their contention relating to apportionment of liability, and the majority concedes as much. Similarly, Pa.R.A.P. 2119(d) suggests that where Owens–Illinois seeks to persuade this court that the trial court erred in not charging the jury as to the liability of all those parties listed on Owens–Illinois' proposed verdict sheets, the obligation is on Owens–Illinois, at its peril,

to set forth a synopsis of all the evidence to support that request, with a reference to the place in the record where that evidence may be found. Owens–Illinois has not done that on this appeal.

In its Summary of Argument, Brief and Appendix for Appellant, page 10, Owens–Illinois argues that it "had a right to prove that a settled defendant was a joint tortfeasor in order to reduce its percentage of liability". I cannot reach this contention because the record contains no evidence whatsoever that Owens–Illinois submitted any evidence which would tend to prove that other defendants were joint tortfeasors.

Russell Ball, as plaintiff, went to trial and submitted sufficient evidence to prove liability against both Owens–Illinois and Keene Corporation. I can locate nothing in the record where either of the defendants actively sought to prove the liability of other corporations during the trial. The majority points out in one of the footnotes to its Opinion that the only other defendant at trial, Keene Corporation, has settled with the plaintiffs and discontinued its appeal. I believe it is inappropriate for this court to fashion an argument for an appellant where that argument has not been properly developed by that appellant in its brief. Moreover, I am unpersuaded that Pennsylvania law requires that a jury be permitted to speculate as to apportionment of damages where no effort has been made by a defendant to particularize the requested relief. Certainly, a trial judge is not required to give a blunderbuss charge which would go well beyond all the evidence offered in a joint liability asbestos case.

I find no error in the denial of the Defendants' Request(s) for Jury Instructions by Judge Prattis. Accordingly, I must dissent from so much of the decision of the majority as would reverse in part and remand for a new trial limited to certain defendants where the majority has found "sufficient evidence of plaintiff's exposure to their products." I must also dissent from that portion of the decision of the majority placed in footnote 3 of its Opinion which would attempt to instruct the trial court on what it must do concerning matters which have

arisen since this appeal was filed. Owens–Illinois does not refer this court to any authority to permit us to attempt such an instruction, and I know of none. I should affirm the judgment in favor of plaintiffs in all respects.