The CITY OF WILKES–
BARRE, Appellant,

v.

KAMINSKI BROTHERS, INC. and
Michael J. Pasonick, Jr., Inc.

Commonwealth Court of Pennsylvania.

Argued April 10, 2002.
Decided June 28, 2002.
Reargument Denied Aug. 21, 2002.

Ralph J. Johnston, Kingston, for appellant.

Patrick R. Casey, Scranton, for appellees.

Before SMITH–RIBNER, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The City of Wilkes–Barre (Wilkes–Barre) appeals from an order of the Court of Common Pleas of Luzerne County (Trial Court) granting summary judgment to the defendant, Michael J. Pasonick, Jr., Inc. (Pasonick) in an action for indemnification filed by Wilkes–Barre. We affirm.

This case has its origins in an accident that occurred on October 30, 1981, when Charles Gutierrez (Gutierrez) stumbled over an exposed and elevated water valve in the tree lawn in front of his home. This caused him to fall into the antenna of a parked automobile and injure his eye. Gutierrez filed a negligence action against Pennsylvania Gas & Water Co., Syrstone, Inc., Antonio Costantino t/a Midway Garden Center, and Kaminski Brothers, Inc. (Kaminski), the general contractor engaged by Wilkes–Barre to do construction for the city on its "North End Improvement Project." The improvements included laying new granite curbing, resurfacing Main Street, repairing sidewalks and landscaping the tree lawns along Main Street, including that in front Gutierrez' home. Kaminski joined Wilkes–Barre as an additional defendant in the lawsuit.

A jury trial was held, and a verdict in the amount of $260,000 was rendered in favor of Gutierrez and against Kaminski and Wilkes–Barre for negligence in allowing the troublesome water valve to remain exposed without adequate warning. The jury assigned 58% of the negligence to Kaminski, 22% to Wilkes–Barre, and 20% to Gutierrez. After the application of comparative negligence and other adjustments, the verdict was molded to $157,600; the addition of delay damages increased the award to $217,531.

Wilkes–Barre filed post-trial motions [1] that were denied, and Wilkes–Barre appealed. During the pendency of the appeal, the case settled. In accordance with that settlement, Wilkes–Barre paid Gutierrez $85,000, and Kaminski paid $181,250. On October 30, 1992, final judgment was entered against Wilkes–Barre on the verdict, and the judgment was marked satisfied.

Pasonick was the consulting engineering firm engaged by Wilkes–Barre to design the North End improvements and to oversee the progress and quality of the work completed by Kaminski. Pasonick did this work pursuant to a contract with Wilkes–Barre dated January 22, 1981 (Contract). Pasonick's employees testified on behalf of Wilkes–Barre in the Gutierrez trial, but Pasonick was not added as a party to the action either by Kaminski or by Wilkes–Barre.

On November 29, 1996, Wilkes–Barre sued both Kaminski and Pasonick for indemnification or contribution [2] for the monies it paid to Gutierrez. In this action, Wilkes–Barre sought indemnification for

---

1. One motion sought to have the verdict further molded by having the court enter judgment against Kaminski on the grounds that it was required to indemnify Wilkes–Barre.

2. Contribution is a method for allocating liability between concurrent tortfeasors. It has no application to Pasonick, who was not a party to the Gutierrez trial. Wilkes–Barre does not assert a right to contribution in this appeal.

the $85,000 payment to Gutierrez and for the $14,834 payment to its attorneys for defending the Gutierrez action. Wilkes–Barre claimed that because Kaminski did the construction work and the engineering firm of Pasonick supervised Kaminski, it was entitled to recovery from them on two theories: common law indemnification and contract indemnification.

Kaminski filed for summary judgment, and its motion was granted on January 4, 1999. Wilkes–Barre did not appeal. Thereafter, Pasonick filed its own motion for summary judgment, which was granted on November 14, 2000. Wilkes–Barre appealed the grant of summary judgment to Pasonick to the Superior Court, which transferred the matter to this Court.

■ On appeal,[3] Wilkes–Barre argues that the Trial Court erred in granting summary judgment to Pasonick. It asserts that it is entitled to common law indemnification because its liability to Gutierrez was based solely on its legal relationship to Pasonick and not on its own acts or omissions. It also claims that the Contract expressly obligated Pasonick to indemnify Wilkes–Barre in these circumstances. We disagree.

■ The right to indemnity arises by operation of law and will be allowed where necessary to prevent an unjust result. It is a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault.[4] The

liability of the indemnitor to the tort victim is sometimes described as "primary" and that of the indemnitee is described as "secondary."[5] Alternatively, the indemnitor is called the "active" tortfeasor and the indemnitee the "passive" tortfeasor. Common law indemnity is not a fault-sharing mechanism that allows a party, whose negligence was minor, to recover from the tortfeasor whose negligence was dominant. It is a fault-shifting mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant whose conduct actually caused the loss.

■ On these basic principles, Wilkes–Barre and Pasonick have no dispute. They both direct this Court to the leading case in Pennsylvania, *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). In that case, our Supreme Court discoursed at some length on the subject of common law indemnity and noted as follows:

> Secondary liability exists, for example, where there is a relation of employer and employee, or principal and agent; if a tort is committed by the employee or the agent recovery may be had against the employer or the principal on the theory of *respondeat superior*, but the person primarily liable is the employee or agent who committed the tort, and the employer or *principal may recover indemnity from him for the damages which he has been obligated to pay.*

---

3. In this appeal, our scope of review is plenary, and the standard by which we evaluate the Trial Court's summary judgment decision is error of law or abuse of discretion. *Petrongola v. Comcast–Spectacor, L.P.*, 789 A.2d 204 (Pa.Super.2001).

4. 18 P.L.E. *Indemnity* § 2 (1988); RESTATEMENT (SECOND) OF TORTS § 886B (1979). The classic example of such a legal relationship is

that of principal and agent, employer and employee.

5. The distinction between primary and secondary liability has no connection to degrees of fault or comparative negligence; indeed, there can be no indemnity between parties who each bear responsibility for the wrong, albeit of varying degrees.

*Id.* at 326, 77 A.2d at 370 (emphasis added). Thus, Pennsylvania subscribes to the widely-held doctrine that a person who has secondary liability may recover indemnification from the party who has primary liability.

The parties disagree, however, on the application of this doctrine to this case. Wilkes–Barre contends that as the owner of the tree lawn where Gutierrez was injured, its liability is only vicarious, thus entitling it to indemnification from Pasonick, who failed to disclose, report or correct the problem water valve. In response, Pasonick contends that Wilkes–Barre is not "without fault" but has been adjudged "negligent" without qualification, which defeats its claim for common law indemnification.

■ Wilkes–Barre faces a significant challenge in proving the jury's verdict against it was based solely on account of its legal relationship with Pasonick, an independent contractor. The general rule is that persons do not have vicarious liability for the torts of the independent contractors they employ. Dan B. Dobbs, The Law Of Torts, § 336 (2001). An independent contractor is simply not a "servant" of the employer. Although Wilkes–Barre now contends that it delegated all supervisory responsibility to Pasonick, this purported delegation may not be valid. Where a landowner employs an independent contractor to do construction,[6] there is authority for the view that the landowner's duty of care is not delegable and that the landowner and the contractor both have liability exposure. Restatement (Second) Of Torts, §§ 417 (cmt.a), 418 (1979). It is in this context that we consider whether the

jury's verdict against Wilkes–Barre was a verdict of "secondary" negligence.

■ The jury in the Gutierrez trial did specify whether Wilkes–Barre's negligence was primary or secondary.[7] Our Supreme Court has directed that this determination must be made on the basis of the record. In *Builders Supply*, the Court held that when a plaintiff introduces the record of a prior action to establish the amount claimed in indemnification, the plaintiff is then "bound by all findings and conclusions without which the judgment could not have been rendered." *Id.* at 329, 77 A.2d at 372. If the record provides any basis for finding the plaintiff primarily negligent, it will defeat indemnification. Thus, indemnification was not authorized in *Builders Supply*.

In *Sirianni v. Nugent Bros., Inc.*, 509 Pa. 564, 506 A.2d 868 (1986), the City of Philadelphia (City) sought indemnification in a post-trial motion from the owner of a structurally unsound property that was ordered demolished by the City and from the City's contractor for the job, Nugent Bros., Inc. (Nugent), both of whom were defendants along with the City. Nugent rammed a front-end loader into the building slated for demolition causing it to collapse into the home next door resulting in a death. The jury apportioned the negligence and found Nugent 50% negligent, the City 25% negligent and the property-owner 25% negligent. The City was not permitted indemnification because it had been adjudged negligent. In the appeal of the post-trial motion, the Superior Court reviewed the record and concluded that it was sufficient to support several theories of primary negligence in the City, any one

---

6. Logically this reasoning applies with equal force to the independent contractor that designed and inspected the construction, as Pasonick did.

7. There is a dearth of instruction in case law or treatise on how to determine whether a jury verdict of negligence is primary or secondary negligence.

of which barred indemnification. The Supreme Court affirmed, stating as follows:

> ... as the Superior Court noted *"the jury could have found the City liable for ... negligent selection of contractor, the peculiar risk doctrine, and failure to supervise the demolition."* The court's characterization of the City's actions as "active fault" was not a reliance on an outdated theory. Rather, it was a correct statement of the fact that *the city participated in the events leading up to the tragedy,* and was not merely liable by operation of law.

*Id.* at 572, 506 A.2d at 871–72 (emphasis added).

██ In this case, the jury in the Gutierrez trial heard the evidence and adjudged Wilkes–Barre negligent, not Pasonick. This verdict may have been based upon Wilkes–Barre's negligent choice of Kaminski, which the jury found to be the dominant tortfeasor, or it may have been based upon Wilkes–Barre's negligent failure to provide adequate supervision of Kaminski, either directly or indirectly through its consulting engineer, Pasonick. Even if we accept Wilkes–Barre's theory that it delegated all responsibility of supervision to Pasonick,[8] perhaps the jury believed this delegation was itself negligent. The record here, as in *Sirianni*, shows that Wilkes–Barre was involved in the events leading up to the accident and consulted daily with Pasonick (R.R. 57a); that Wilkes–Barre issued change orders in the project specific to the tree lawn in question (R.R. 65a); and that Wilkes–Barre's police and employees worked with Kaminski on positioning warning signs to the public. (R.R. 95a). Wilkes–Barre's ongoing involvement in the project is even confirmed by the Contract in which the city retained "final responsibility for decisions relating to the planning and implementation" of the program. (R.R. 6a–7a) notwithstanding its engagement of Pasonick.[9]

██ Thus, consistent with *Builders Supply* and *Sirianni*, we find that the verdict of negligence against Wilkes–Barre was not a verdict of secondary negligence imposed by operation of law. Unless the

8. This assumes *arguendo*, that the landowner's duty of care could be entirely delegated. However, the RESTATEMENT OF TORTS §§ 419–421 (1979), teaches that this duty is non-delegable because it is the owner's obligation to maintain premises in a safe condition for those lawfully on the land. See also, DOBBS § 337.

9. The judge that heard the Gutierrez case denied Wilkes–Barre's post-trial motion seeking indemnification from Kaminski. Wilkes–Barre raised the issue of indemnification in its new matter filed with its answer, but it did not develop the defense at trial. The judge castigated Wilkes–Barre in strong terms:

> Glaringly absent from the trial record, however, is any reference ... to the indemnification agreement or the contractual documents which were made part of the record. In fact, the record discloses that [Wilkes–Barre] rested without putting on any evidence. Indemnification is an affirmative defense under Pa.R.C.P. 1030. The burden of proof is on the Defendant in a civil case to prove all affirmative defenses. Where a Defendant has failed to put on any evidence in support of an affirmative defense, that defense must fail and the relief sought by Defendant disallowed.

(R.R. 156a). The same may be said of Wilkes–Barre's claim that Pasonick was primarily negligent: this should have been developed at the Gutierrez trial.

Wilkes–Barre decided to seek indemnification in a separate proceeding, and it did so at its peril because the time has passed to prove that Pasonick's actions, not Wilkes–Barre's actions, resulted in the verdict that Wilkes–Barre was negligent. There is nothing in the record to show that Pasonick was negligent, but the record does support a finding that Wilkes–Barre's negligence was primary. Under *Sirianni*, it is not necessary that we know exactly how the jury reasoned so long as there is any evidence to support primary negligence.

terms "by operation of law" or "secondary" appear in a jury verdict of "negligence," it should be presumed to be a verdict of primary negligence. In the absence of such express qualifiers, then the claim that "negligence" means "secondary negligence" must be otherwise obvious; there must be no other explanation for the verdict in the record. As plaintiff, Wilkes–Barre had the burden to prove that it was without fault and negligent in name only. It did not meet this burden,[10] and the Trial Court correctly held that Wilkes–Barre's adjudicated negligence barred it from pursuing the equitable remedy of indemnification.

■■■■ Wilkes–Barre next claims that the Contract entitles it to indemnification from Pasonick. A contract that entitles a party to indemnification for its own negligence is permissible, but such a contract term must be unmistakable. *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907). As stated by our Supreme Court,

> We think it clear, on reason and authority, that a contract of indemnity against personal injuries, should not be construed to indemnify against the negligence of the indemnitee, unless it is so expressed in unequivocal terms. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemni-

tor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of general import can establish it.

*Id.* at 262–263, 66 A. at 557. This principle has remained constant. *Urban Redevelopment Authority of Pittsburgh v. Noralco Corp.*, 281 Pa.Super. 466, 422 A.2d 563 (1980); *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1 (1991).

■■■ Wilkes–Barre directs our attention to several provisions in the Contract by which, arguably, Pasonick agreed to hold Wilkes–Barre harmless for workers' compensation claims, bodily injury, death or property damage caused by the negligence of Pasonick or its employees.[11] (R.R. 15a–16a). The condition precedent to this provision of the Contract is Pasonick's *negligence*. This has not been established. Wilkes–Barre now believes that had Pasonick properly performed its inspection duties that the accident may not have occurred or, at least, Wilkes–Barre would not have received an adverse verdict. Pasonick's responsibility for the accident should have been established in the Gutierrez trial. Instead, Kaminski, Wilkes–Barre and Gutierrez were each found to be negligent in varying degrees. Pasonick was not found negligent and, therefore, the provisions in the Contract identified by Wilkes–Barre do not apply.

---

10. Wilkes–Barre argues that the Trial Court failed to "use" the record of the Gutierrez trial proceedings. Because this is a separate action, it was Wilkes–Barre's obligation to have the relevant portions of the Gutierrez trial made part of the record in this proceeding. As noted in this opinion, there were several bases in the Gutierrez trial record to support the conclusion that the jury verdict holding Wilkes–Barre negligent was a verdict of primary negligence. The Trial Court had no duty, or right, to re-try the Gutierrez case emphasizing the portions of the record that Wilkes–Barre found helpful to its claim.

Most requests for indemnification are presented in a post-trial motion to the same judge that heard the negligence case. *E.g., Sirianni v. Nugent Bros., Inc., supra.* This is the preferred procedure for seeking indemnification because, of course, the trial court that conducted the negligence case will know whether the jury's verdict of negligence was primary or secondary.

11. In fact, Pasonick only agreed to purchase insurance against these risks.

█ While the Contract does not obligate Pasonick to indemnify Wilkes–Barre for the negligence of the city or its employees, it does provide for exactly the opposite. The Contract specifically states that

> [t]he *Engineer shall not be responsible for the acts or omissions of* any Contractor or Subcontractor or their agents or employees, or *any other persons* (except his own employees and agents) at the project site or otherwise performing any of the work of the Project.

(emphasis added). (R.R. 16a). Wilkes–Barre is such an "other person" found liable for its negligence in "otherwise" performing "any" of the work of the North End Improvement Project. Thus, to the extent the topic of indemnification is addressed in the Contract, it supports the conclusion that Pasonick expressly declined to be liable for Wilkes–Barre's negligence.

The Trial Court dismissed Wilkes–Barre's contractual indemnification claim because of Wilkes–Barre's failure to identify a clause in the Contract obligating Pasonick to indemnify Wilkes–Barre in these circumstances. An agreement to supervise the work of Wilkes–Barre's contractor does not make Pasonick a guarantor of Kaminski's performance. The Contract does not contain the unequivocal expression of Pasonick's obligation to indemnify Wilkes–Barre that our courts require. Thus, the Trial Court correctly dismissed the claim of indemnification.

Accordingly, we affirm the Trial Court's entry of summary judgment in favor of Pasonick.

### ORDER

AND NOW, this 28th day of June, 2002, the order of November 14, 2000 of the Court of Common Pleas of Luzerne County in the above-captioned case is affirmed.