Tasha Robinson      :
           :
    v.      :
           :
Philadelphia International Airport, :
City of Philadelphia, Menzies Aviation, :
John Menzies, PLC, Menzies Aviation :
Group (USA), Inc., Aircraft Service :
International, Inc., PSA Airlines,  :
and American Airlines Terminal F :
           : No. 263 C.D. 2022
Appeal of: City of Philadelphia  : Argued: March 4, 2025

BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE CHRISTINE FIZZANO CANNON, Judge
     HONORABLE MARY HANNAH LEAVITT, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON      FILED: June 9, 2025


    The City of Philadelphia (City) appeals from the January 6, 2022, order of the Court of Common Pleas of Philadelphia County (trial court). The trial court's order granted the motion *in limine* of American Airlines (American) and held that the City remains a party in the underlying tort litigation for purposes of the trial and verdict sheet. The City asserts that the trial court's order violated coordinate jurisdiction principles because a prior trial court order dated December 22, 2020, granted the City's motion for summary judgment and dismissed with prejudice all claims and crossclaims asserted against the City, including a crossclaim by American. Upon review, we reverse the trial court's January 6, 2022, order and remand for further proceedings.

## I. Factual & Procedural Background

In March 2019, Tasha Robinson (Robinson) filed a complaint against, among others, the City and American. Reproduced Record (R.R.) at 52a-64a. Robinson averred that on March 31, 2017, she was on her way to her job as a gate agent at the Philadelphia International Airport when she fell in a slippery area on the tarmac outside Terminal F and sustained various injuries. *Id*. at 60a-62a. She asserted claims sounding in negligence against all named defendants. *Id*. at 62a-64a.

American filed an answer with new matter asserting various defenses against Robinson's allegations, as well as crossclaims against the City and other defendants. R.R. at 67a-77a. American's crossclaim against the City alleged that if Robinson's claims were viable, the City was either solely or jointly liable to Robinson on the basis of negligence and should be subject to indemnity and contribution based on the Uniform Contribution Among Tort-feasors Act, 42 Pa.C.S. §§ 8321-8327. *Id*. at 74a-76a. Notably, American's crossclaim against the City did not assert contractual claims against the City based on the lease between the City and American. *Id*. at 76a-77a.

The City similarly filed an answer with new matter and crossclaims. *Id*. at 81a-94a. The City asserted various defenses against Robinson's allegations, including governmental immunity pursuant to the Political Subdivision Tort Claims Act, 42 Pa.C.S. §§ 8541-8542 (Tort Claims Act), lack of control of the area where Robinson fell, lack of notice of the condition of the area where Robinson fell ("common law notice"), and lack of written notice from Robinson advising of her claims against the City as a governmental unit, as required by Section 5522 of the

2

Judicial Code, 42 Pa.C.S. § 5522 ("statutory notice");[1] the City crossclaimed against American and other defendants for common law indemnity and contribution. *Id*. at 81a-88a. The City also crossclaimed against American alone for contractual indemnity, including attorney's fees, based on a lease provision stating that American bore responsibility for the premises where Robinson's injury occurred. *Id*. at 90a-94a.

In October 2020, the City filed a motion for summary judgment with regard to Robinson's claims. R.R. at 222a. The City reiterated its assertion of governmental immunity, claiming that because the incident occurred on an "inner service road" at the airport, the only applicable exception to immunity was the "public streets" exception.[2] *Id*. at 222a-25a. However, the City averred that based

---

[1] Section 5522(a)(1) states that within six months of an incident, the plaintiff must provide a government entity with a written statement setting forth:

> (i) The name and residence address of the person to whom the cause of action has accrued.
> (ii) The name and residence address of the person injured.
> (iii) The date and hour of the accident.
> (iv) The approximate location where the accident occurred.
> (v) The name and residence or office address of any attending physician.

42 Pa.C.S. § 5522(a)(1). Section 5522 (a)(2) states that in the absence of this notice, the plaintiff's case may be barred with prejudice. 42 Pa.C.S. § 5522(a)(2).

[2] The "streets" exception states that a governmental unit may be liable if an injury occurs due to:

> A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of

on the evidence, the area where Robinson fell was not defective in and of itself but had an "oily substance" on it that was not within the City's control, and the City's immunity remained viable. *Id.*

The City added that the evidence did not show that it had common law notice of the dangerous condition, which is part of the "streets" exception to immunity as well as an independent duty of care owed by a landowner to business invitees. R.R. at 225a-27a (citing Section 343 of the Restatement (Second) of Torts (Am. L. Inst. 1965)).[3] This was because the evidence did not show that the condition had existed long enough prior to the accident for the City to have actual or constructive notice of it. *Id.* at 226a-27a. The City separately re-asserted that Robinson failed to provide it with written statutory notice of her claim within six

---

the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(6)(i).

[3] This section, titled "Dangerous Conditions Known to or Discoverable by Possessor," states:

A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and
(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and
(c) invites or permits them to enter or remain upon the land without exercising reasonable care
(i) to make the condition reasonably safe, or
(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to receive, if the possessor is a public utility.

Restatement (Second) of Torts § 343 (Am. L. Inst. 1965).

4

months of the incident pursuant to 42 Pa.C.S. § 5522(a)(2) (requiring notice to government unit of possible injury action within six months of incident). *Id*. at 227a.

The City also filed a motion for summary judgment with regard to American's crossclaim. R.R. at 386a-92a. The City asserted that based on the lease between the City and American, American was responsible for the area where Robinson fell and must indemnify the City against Robinson's claims. *Id.* The City added that American breached its lease agreement by failing to secure insurance coverage for the City as provided in the agreement. *Id*.

American, too, filed a motion for summary judgment concerning Robinson's claims. R.R. at 407a-19a. American asserted, *inter alia*, that the evidence showed Robinson's injury did not occur in an area of the airport under American's control. *Id.* Further, the evidence failed to show that American knew about, should have known about, or caused the condition that led to the injury. *Id*.

American also filed a motion for summary judgment with regard to the City's crossclaim, arguing that Robinson's injury occurred on premises controlled by the City, not American, and that the City was not immune. R.R. at 610a-20a. American denied the City's crossclaim averments regarding insurance coverage. *Id*.

The City and American filed responses to each other's motions for summary judgment on their crossclaims, and Robinson filed responses to the City's and American's motions for summary judgment. R.R. at 807a-1436a. Relevant to this appeal, American did not file a response in opposition to the City's motion for summary judgment concerning Robinson's claims. *See id*. at 32a-33a (Trial Ct. Docket). Robinson's response to the City's motion for summary judgment asserted that the area where she fell was within the City's control, that it was defectively designed and constructed, and that the City knew or should have known of the defect.

5

*Id*. at 1065a-80a. Therefore, Robinson asserted, the condition met the "real property" or real estate exception to governmental immunity, and the City should remain a defendant.[4] *Id*.

On December 22, 2020, Judge Kennedy of the trial court issued an order granting the City's motion for summary judgment concerning Robinson's claims, holding that "[a]ll claims and cross[-]claims asserted against [the City] in the above-captioned matter are hereby DISMISSED with prejudice." R.R. at 1437a. In his subsequent opinion, Judge Kennedy acknowledged the City's assertion of immunity on the basis that the evidence did not support the "public streets" exception of the Tort Claims Act, as well as Robinson's assertion that the "real property" exception applied to defeat immunity. Trial Ct. Op., Sept. 16, 2024, at 4-5. However, Judge Kennedy concluded that the difference was not dispositive, because both exceptions pertain to "government controlled land," where the relevant analysis focuses on whether there is an "actual defect *of* the land itself" that causes the injury. *Id*. at 5 (quoting *Bullard v. Lehigh-Northampton Airport Auth.*, 668 A.2d 223, 225 (Pa. Cmwlth. 1995) (emphasis added).

Judge Kennedy concluded that the evidence, including Robinson's testimony, did not show that her fall "was the result of a defect in the property or in its construction, maintenance, repair, or design." Trial Ct. Op., Sept. 16, 2024, at 6-

---

[4] The "real property" exception states that a governmental unit may be liable if an injury occurs due to:

> The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency. . . .

42 Pa.C.S. § 8542(b)(3).

8 (stating that the evidence showed only that the oily substance was "on the tarmac" and not "of the tarmac" within the City's control). As such, Judge Kennedy concluded that the evidence supported the City's immunity based on the evidentiary failure of the real property exception. *Id.* at 7-8.

Judge Kennedy further concluded on the City's common law notice assertions that the evidence did not show that the City knew or should have known of the oily substance on the tarmac such that it owed Robinson a duty of care that had been breached, as very little time had passed between the onset of the wet oily condition and Robinson's accident. *Id*. at 8-10. Lastly, Judge Kennedy stated that once the incident occurred, the City had sufficient constructive notice of Robinson's potential suit to defeat its statutory notice assertions based on 42 Pa.C.S. § 5522(a)(2).[5] *Id*. at 11 n.2.

Relevant to this appeal, Judge Kennedy did not find that the City did not control the area where Robinson fell. Rather, he determined that, even presuming control by the City, it was immune because the evidence did not show that the defect was "of" the area or that the City had common law notice of the defect. In light of Judge Kennedy's December 2020 order dismissing all claims and crossclaims against the City, the City was subsequently removed from the docket. *See* City's Reply Br. at 4 (citing American's Br. at 20).

On the same date, Judge Kennedy issued an order denying American's motion for summary judgment concerning Robinson's claims. R.R. at 1438a. On January 7, 2021, Judge Kennedy issued orders denying the City's motion for

---

[5] This issue is not relevant to this appeal and, further, is now moot in light of our holding, which restores Judge Kennedy's December 2020 order dismissing the City from this litigation entirely and with prejudice.

7

summary judgment concerning American's crossclaim against the City and denying American's motion for summary judgment concerning the City's crossclaim against American. *Id*. at 1439a-40a. Judge Kennedy did not explain the bases for those orders. As discussed further below, Judge Kennedy's January 2021 denial of the City's motion for summary judgment against American was inconsistent with his December 2020 order dismissing all claims and crossclaims against the City, including American's crossclaim pleading solely negligence-based allegations that the City was a fellow tortfeasor. However, neither Robinson nor American sought permission to appeal the December 2020 and January 2021 orders.[6] At that point, American was the sole remaining defendant for Robinson to pursue at trial; however, the City's contract-based crossclaims against American remained formally pending even though it was no longer a party to the litigation. *See id*. at 1461a. The City subsequently asserted that because it had been dismissed from the litigation, it did not intend to pursue its remaining contract based crossclaims against American. *Id*. at 1516a.[7] The City's claims, however, have not been formally withdrawn.

In July 2021, American filed a motion for reconsideration of Judge Kennedy's December 2020 order granting the City's motion for summary judgment concerning Robinson's claims. R.R. at 1443a-49a. American asserted that Judge Kennedy erred in granting the City's motion because Robinson's testimony

---

[6] *See K.H. v. J.R.*, 826 A.2d 863, 869 (Pa. 2003) (stating that "in an action involving multiple defendants, and in the absence of an express determination [of finality] by the trial court under [Pa.R.A.P.] 341(c), an order granting summary judgment as to one party is treated as appealable as of right only after the disposition of the claims involving the remaining parties"). Here, where Judge Kennedy did not express that his order granting summary judgment to the City was a final order, Robinson and American would have had to seek Judge Kennedy's permission to appeal his order prior to trial. *See* Pa.R.A.P. 312.

[7] The City's counsel confirmed this position at oral argument before this Court.

established that her injury occurred outside the area within American's control pursuant to its lease agreement with the City. *Id*. at 1446a-48a. Judge Kennedy denied American's motion for reconsideration. *Id*. at 1458a.

In August 2021, American filed a motion *in limine* seeking to present evidence against the City at trial and have the City included on the jury verdict sheet. R.R. at 1459a. American maintained that Judge Kennedy's December 2020 order constituted clear error because the evidence showed that the area where Robinson fell was outside of American's leasehold and within the City's control. *Id*. at 1461. American maintained that the coordinate jurisdiction rule[8] did not prevent the trial court from granting American's motion *in limine* because that motion differed in kind from the City's prior motion for summary judgment even though the underlying legal issue of the City's liability was the same. *Id*. at 1467a. As such, American asked that it be permitted to present evidence at trial in support of its own affirmative defenses to Robinson's complaint and its "previously dismissed cross[-]claims against the City." *Id*. at 1469a. Robinson similarly filed a motion *in limine* seeking to present evidence against the City at trial. *Id*. at 1482a-85a.

The City responded that the coordinate jurisdiction rule precluded the relief sought by American and Robinson and that their motions *in limine* were thinly veiled attempts to "get a second bite at the apple" and circumvent Judge Kennedy's prior dismissal of the City from the litigation. *Id*. at 1514a-21a & 1533a-40a.

On January 6, 2022, Judge Carpenter of the trial court issued an order stating:

---

[8] The coordinate jurisdiction rule, which is discussed further below, states that "judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.*, 310 A.3d 742, 754 (Pa. 2024).

> [The City] remains a party in this action by virtue of this
> Court's finding that the Orders of December 22, 2020, and
> January 7, 2021 did not properly extinguish [American's]
> cross[-]claims against the City.  Further, this Court finds
> that the City is not immune from [American's] cross[-]claims
> and the City may remain on the verdict sheet for purposes
> of the Fair Share Act.[9]

R.R. at 48a-49a (Trial Ct. Docket).  Relevant to this appeal, Judge Carpenter's order did not specifically address the City's distinct common law notice assertion in its motion for summary judgment, which Judge Kennedy upheld, that even if the City was not immune and had control of the area where Robinson fell, the City did not have actual or constructive notice of the slippery condition in that area.  *See id.*

The City sought reconsideration of Judge Carpenter's January 2022 order, asserting that American waived its right to pursue its crossclaims against the City at trial because American did not oppose the City's prior motion for summary judgment concerning Robinson's claims or seek to appeal Judge Kennedy's December 2020 order granting that motion and dismissing all pending claims and crossclaims against the City.  R.R. at 1554a-60a.  The City added that American's crossclaims against it were predicated on its purported status as a joint tortfeasor liable to Robinson and that Judge Kennedy's December 2020 order correctly dismissed it from Robinson's claims and, by extension, American's crossclaims.  *Id.* at 1561a-65a.

Judge Carpenter denied the City's motion for reconsideration of her January 2022 order granting American's motion *in limine*, and in July 2022, this

___

[9] The Fair Share Act, 42 Pa.C.S. § 7102, "abolished joint and several liability in most negligence cases.  [It] requires that damages be apportioned in negligence cases based upon the relative causal negligence of the parties." *Adams v. Rising Sun Md. Ctr.*, 257 A.3d 26, 42 (Pa. Super. 2020).  Superior Court decisions are not binding on this Court but may be cited as persuasive where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

10

Court granted the City's request to appeal that order. R.R. at 50a. Judge Carpenter stayed the trial of the underlying matter pending this appeal and issued an opinion in support of her January 2022 order. Original Record (O.R.) # 109 & #110. Judge Carpenter explained that in deciding the motions *in limine* regarding which parties were necessary for appearance at trial and potentially on the verdict sheet, she was not bound by Judge Kennedy's prior dismissal of the City on summary judgment. O.R. #10 at 3. Judge Carpenter added that American's crossclaim against the City remained viable because American had presented sufficient evidence to submit to the jury that based on the lease between the City and American, the area where Robinson fell was controlled by the City, not American, and the "real estate" exception to immunity applied. *Id*. at 2-4. As noted above, however, American's crossclaim against the City had not asserted contractual claims based on its lease with the City. Judge Carpenter did not address the City's assertions based on common law notice as an independent basis for its denial of liability, which Judge Kennedy had upheld as explained in his opinion. *See* Trial Ct. Op., Sept. 16, 2024, at 9-10.

## II. Issues Presented

The City argues that American waived its right to try to return the City to this litigation via motion *in limine* because it previously failed to either oppose the City's motion for summary judgment concerning Robinson's underlying claims or seek to appeal Judge Kennedy's December 22, 2020, order granting that motion and dismissing all of Robinson's claims against the City. City's Br. at 13. The City also argues that Judge Carpenter's January 2022 order returning the City to the litigation violated coordinate jurisdiction principles. City's Br. at 14.

11

## III. Discussion

### A. Inclusion of the City at Trial and on the Verdict Sheet

The Fair Share Act states:

**(a.1) Recovery against joint defendant; contribution--**

Where recovery is allowed against more than one person, including actions for strict liability, and where liability is attributed to more than one defendant, each defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of that defendant's liability to the amount of liability attributed to all defendants and other persons to whom liability is apportioned under subsection (a.2).

**(a.2) Apportionment of responsibility among certain nonparties and effect--**

For purposes of apportioning liability only, the question of liability of any defendant or other person who has entered into a release with the plaintiff with respect to the action and who is not a party shall be transmitted to the trier of fact upon appropriate requests and proofs by any party[.]

42 Pa.C.S. § 7102(a.1), (a.2).

Our Supreme Court set forth the basic principles of contribution in *McLaughlin v. Nahata*, 298 A.3d 384 (Pa. 2023), an opinion pertaining to vicarious liability. Considering the Uniform Contribution Among Tort-feasors Act, the Court noted the Act's definition of joint tortfeasors as "two or more persons jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." *Id*. at 395 (quoting 42 Pa.C.S. § 8322). Contribution "is available *whenever two or more persons are jointly or severally liable in tort, irrespective of the theory by which tort liability is imposed.*" *Id*. at 396 (quoting *Straw v. Fair*, 187 A.3d 966, 1002) (emphasis added

12

by *McLaughlin*). Accordingly, here, as the City has been found to be without fault, and therefore not a tortfeasor, it cannot be subject to contribution. In that regard, Judge Kennedy's opinion in support of his order stated that the evidence did not show that the City knew or should have known of the slippery condition where and when Robinson fell, such that it owed her a duty of care that had been breached. Neither Robinson nor American sought to appeal that order, which became the law of the case.

Regarding indemnity in the negligence context, this Court stated in *City of Wilkes-Barre v. Kaminski Brothers*, 804 A.2d 89 (Pa. Cmwlth. 2002), that it is "a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." *Id*. at 92. "It is a fault-shifting mechanism that comes into play when a defendant held liable by operation of law seeks to recover from a defendant whose conduct actually caused the loss." *Id*. at 92. This type of indemnity is distinct from contractual indemnity, which "entitles a party to indemnification for its own negligence," but the intended nature of the terms "must be unmistakable." *Id*. at 95. Here, American's ability to seek common law tort indemnity from the City would require a showing that the City "actually caused" Robinson's injury. However, Judge Kennedy determined in his December 2020 order that the City bore no liability for Robinson's injury because the evidence did not show that the City had common law notice of the slippery condition where and when Robinson fell, and that order became the law of the case. Additionally, American's crossclaim did not pose a contractual indemnity claim against the City based on their lease. Accordingly, the City could not be subject to either type of indemnity in this case.

13

In the context of a motion for summary judgment, Pennsylvania Rule of Civil Procedure 1035.3(a)(1) states that a party adverse to the motion "may not rest upon the mere allegations or denials of the pleadings" and must file a response to the motion within 30 days; the response must identify genuine issues of material fact "arising from evidence in the record controverting the evidence cited in support of the motion." Pa.R.Civ.P. 1035.3(a)(1). Failure to do so may constitute a basis for the trial court to conclude that there is no genuine dispute of material fact and to therefore grant the motion. *See* Pa.R.Civ.P. 1035.3(d); *Evans v. Thomas Jefferson Univ.*, 81 A.3d 1062, 1069 (Pa. Cmwlth. 2013).

In *Ball v. Johns-Manville Corporation*, 625 A.2d 650 (Pa. Super. 1993), an asbestos case, some defendants were dismissed on summary judgment prior to trial. *Id*. at 652. After the close of the plaintiff's case at trial, Owens, one of the remaining defendants, asked that the dismissed defendants be placed on the jury verdict sheet as part of special interrogatories asking the jury to find that all originally named defendants contributed to the plaintiff's injuries and, if so, to apportion liability among them. *Id*. The trial court declined to do so. *Id*. After trial, at which the jury awarded a verdict in the plaintiff's favor, the trial court refused to grant Owens a new trial at which its proposed special interrogatories and charge on apportionment would be given to the jury. *Id*. at 653.

In *Ball*, the Superior Court considered *Paparelli v. GAF Corporation*, 549 A.2d 597 (Pa. Super. 1988), where several asbestos defendants were similarly dismissed on summary judgment. 549 A.2d at 598. The remaining *Paparelli* defendants, who had not previously opposed the motion, appealed. *Id*. They contended that since they had filed crossclaims for contribution and indemnity against the dismissed defendants, the entry of summary judgment for the dismissed

defendants improperly prevented the remaining defendants from having their crossclaims against those defendants resolved in one lawsuit. *Id*. at 599. The Superior Court concluded that the remaining defendants had waived their right to contest the result of the summary judgments by not opposing them prior to their entry. *Id*. at 599-600.

Consistent with its reasoning in *Paparelli*, the Superior Court noted in *Ball* that Owens did not oppose the other defendants' motion for summary judgment. 625 A.2d at 661. Moreover, unlike the defendants in *Paparelli*, Owens did not even try to appeal after the grant of summary judgment to protect its right to seek contribution from the dismissed defendants at trial. *Id*. Thus, Owens had "foregone any right it had to include these defendants in this jury's verdict." *Id*.

Here, American seeks to have the City returned to this litigation at trial for purposes of determining the City's liability for purposes of contribution and indemnity; in the alternative, American seeks to have the City at least listed on the verdict sheet so that the jury may apportion fault and reduce any recovery American may owe to Robinson. *See* R.R. at 1459a-70a (American's Motion *in Limine*).

Citing *Ball*, the City argues that when American failed to oppose the City's motion for summary judgment concerning Robinson's claims, upon which American's crossclaims against the City relied, American waived its right to later challenge Judge Kennedy's grant of that motion and dismissal of the City. City's Br. at 16-18. The City explains that American's failure to oppose the City's motion meant that it was never a party to that aspect of this litigation and could not subsequently challenge its outcome. *Id*.

American responds that it had the right to object later to the dismissal of Robinson's claims against the City because Judge Kennedy's December 2020

15

order was interlocutory and could be modified by the trial court at any time up to the entry of a final judgment.[10] American's Br. at 20-21. American states that *Ball* and *Paparelli* are inapposite because they pertained to crossclaims for common law indemnity rather than contractual indemnity. *Id.*

We find *Ball* both apposite and persuasive. Concerning American's effort to have the City present at trial for liability purposes, it is critical here that, as the City explains, American's crossclaims against the City for contribution and indemnity depend on a finding at trial that the City is liable to Robinson. City's Reply Br. at 4-5 n.2. Our review of American's crossclaim against the City confirms this, as American's allegations against the City are based solely on the City's purported negligence towards Robinson; American's crossclaims against the City do not include contractual assertions against the City based on the lease between the two entities. *See* R.R. at 76a-77a. Further, American asserted no claims against the City based on control of the area where Robinson fell, although the City made such claims in its crossclaim against American.

American could, nonetheless, have protected its interest in maintaining Robinson's claims against the City by opposing the City's motion for summary judgment against Robinson's claims, but American did not do so. Judge Kennedy's grant of summary judgment holding that the City was not liable to Robinson because the City was immune and did not have common law notice of the condition of the area where Robinson fell precluded any such finding at trial because, under the Uniform Contribution Among Tort-feasors Act, Judge Kennedy concluded that the City was not a tortfeasor. American fails to explain why *Ball* and, by extension,

---

[10] Pursuant to Section 5505 of the Judicial Code, a trial court may only amend a final order within 30 days of its entry but may modify an interlocutory order beyond 30 days. 42 Pa.C.S. § 5505; *Buehl v. Horn*, 728 A.2d 973, 977 (Pa. Cmwlth. 1999).

16

*Paparelli*, should be distinguished because those cases did not entail a crossclaim for contractual indemnity. As explained previously, American's crossclaim against the City likewise did not raise contractual claims against the City, even though the City had raised such claims against American.

By failing to oppose the City's motion for summary judgment as to Robinson's claims or seek an appeal of Judge Kennedy's December 2020 order granting the City's motion, American could not challenge Judge Kennedy's grant of summary judgment and dismissal of the City prior to trial. Therefore, Judge Kennedy's order removed the City from this litigation as to potential liability at trial. As will be discussed below, Judge Carpenter's subsequent ruling to the contrary in the context of American's motion *in limine* violated the coordinate jurisdiction rule.

Judge Kennedy's conclusion that the City was immune from suit also negated American's wish to include the City on the verdict sheet at trial so that even if the City is not required to pay damages, the jury might apportion fault to the City and reduce American's potential exposure. Section 8541 of the Tort Claims Act states: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541. Although the statute states only that the governmental entity cannot be "liable for damages," our Courts have explained that immunity is more than "simply a mere shield from judgment or liability"; it "protects government entities from a lawsuit itself[.]" *Brooks v. Ewing Cole, Inc.*, 259 A.3d 359, 372-73 (Pa. 2021) (collecting cases); *see also Hommrich v. Boscola*, 329 A.3d 775, 784 (Pa. Cmwlth. 2025) (stating that governmental immunity is "more than just a shield against damages but, instead, [is a] protection[] against suit in the first place").

17

This is because defending a lawsuit from which it is immune "requires a governmental entity to expend taxpayer dollars on its defense." *Ewing*, 259 A.3d at 373. As such, requiring a government entity "to engage in litigation from which [it] is immune and allowing such litigation to proceed clearly undermines the purpose of immunity." *Hommrich*, 329 A.3d at 784. Accordingly, in light of Judge Kennedy's adjudication of the City's immunity, which neither Robinson nor American sought to appeal prior to trial, subjecting the City to further litigation in this matter, even for the sole purpose of potentially reducing American's exposure, would defeat the purpose of that immunity.[11]

However, Judge Kennedy reached an additional independent conclusion that the City was entitled to summary judgment because even assuming it had control of the area where Robinson fell, the City did not have common law notice of the condition of the area. That conclusion foreclosed any finding of fault on the part of the City. Judge Carpenter's subsequent order in the context of American's motion *in limine* did not expressly address or overrule Judge Kennedy's conclusion on this issue and, as will be discussed below, even if Judge Carpenter had done so, it would have violated the coordinate jurisdiction rule.

To the extent Judge Kennedy's order was interlocutory because it did not conclude the entire litigation, American may appeal it after the final disposition, presumably at trial, of all remaining claims and parties. *See K.H. v. J.R.*, 826 A.2d 863, 869 (Pa. 2003) (stating that "in an action involving multiple defendants, and in the absence of an express determination [of finality] by the trial court . . . , an order granting summary judgment as to one party is treated as appealable as of right only after the disposition of the claims involving the remaining parties"). Because Judge

---

[11] However, as this matter will be remanded, the City must formally withdraw its crossclaims against American prior to trial to ensure that it is fully excused from this litigation.

Kennedy's opinion did not conclude that the City did not control the area where Robinson fell, American will not be precluded from arguing at trial that it did not control the area where Robinson fell. Nonetheless, it cannot assert that the City is liable.

## B. Coordinate Jurisdiction Rule

The coordinate jurisdiction rule provides that "judges of coordinate jurisdiction sitting in the same case should not overrule each other's decisions." *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.*, 310 A.3d 742, 754 (Pa. 2024). The rule, which falls within the more general "law of the case" doctrine, promotes judicial economy by serving "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Id.* Whether a court's order violates the coordinate jurisdiction rule is a question of law over which our review is *de novo*. *Id.*

Departure from the rule is limited to exceptional circumstances "where there has been an intervening change in the controlling law [or] a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Ivy Hill*, 310 A.3d at 754. In considering these exceptions, the *Ivy Hill* Court explained:

> While a ruling issued at a different stage of the proceedings may give rise to one of the limited exceptions to the coordinate jurisdiction rule – for example, a change in the facts – it is the demonstration of the exceptional

circumstance, not the distinct procedural posture, which renders the coordinate jurisdiction rule inapplicable.

310 A.3d at 758.

Additionally, our Supreme Court has rejected the premise that the coordinate jurisdiction rule should not apply if the resulting trial would result in a directed verdict for the defendant, entailing a waste of resources. *Goldey v. Trustees of Univ. of Pa.*, 675 A.2d 264, 267 (Pa. 1996). According to the Court, that position "says nothing that is not true in every case where summary judgment has once been denied and a second judge has a different view. In effect, the defendant has happened upon a judge for trial who agrees with the analysis that the first judge did not accept." *Id.* Instead, the keys are "the need for finality" associated with pretrial motions and "the prevention of judge shopping." *Id.* at 267-68 (citation omitted).

In *Bates v. Delaware County Prison Employees' Independent Union*, 150 A.3d 121 (Pa. Cmwlth. 2016), this Court considered the recognized exceptions to the coordinate jurisdiction rule, particularly the clear error/manifest injustice exception, and reasoned:

> To accede to a coordinate judge's order that is clearly erroneous would be not only to permit an inequity to work on the party subject to the order, but would allow an action to proceed in the face of almost certain reversal on appellate review. Moreover, the requirement that the prior holding also create a manifest injustice serves as a significant curb on the exception so that it would apply to only those situations in which adhering to the prior holding would be, in essence, plainly intolerable.

*Bates*, 151 A.3d at 129-30. As in *Goldey*, this Court in *Bates* rejected the defendant's assertion that being "forced" to go to trial when the outcome, if unfavorable to the defendant, would likely be reversed on appeal, amounted to a manifest injustice. *Id.* at 130.

20

Recounting the facts here, the City's motion for summary judgment regarding Robinson's claims asserted governmental immunity on the basis that the evidence did not establish a defect *of* the area where Robinson fell. R.R. at 222a-28a. The City added that the evidence did not establish that the City had common law notice of the condition of the area where Robinson fell. *Id.*

Although American did not oppose the City's motion for summary judgment concerning Robinson's claims, Robinson filed a response asserting that the area where she fell was within the City's control and was defective, and that the City knew or should have known of the defect. R.R. at 1065a-80a. Although the City had asserted immunity based on the inapplicability of the "streets" exception, Robinson asserted that immunity was not warranted based on the applicability of the "real property" exception.

Judge Kennedy granted the City's motion in his December 2020 order directing that "[a]ll claims and crossclaims asserted against [the City] in the above-captioned matter are hereby DISMISSED with prejudice." R.R. at 1437a. Judge Kennedy explained that the evidence did not support the real property exception to the City's asserted immunity or show that the City had common law notice of the slippery substance on the area where Robinson fell. Trial Ct. Op., Sept. 16, 2024, at 7-10. American did not seek to appeal Judge Kennedy's order to this Court.

Even though Judge Kennedy's December 2020 order dismissed "all claims and cross[-]claims" against the City in the context of the City's motion for summary judgment against Robinson, his subsequent January 2021 order inexplicably purported to deny the City's motion for summary judgment seeking

21

dismissal of American's crossclaim against the City.[12]  R.R. at 1439a.  On the same date in January 2021, Judge Kennedy denied American's motion for summary judgment on its crossclaims against the City, which did not include a contractual claim based on the lease between the City and American.  R.R. at 1440a.

In August 2021, American filed its motion *in limine* seeking to present evidence at trial of the City's liability and to have the City included on the verdict sheet.  R.R. at 1459a-70a.  American argued that the area where Robinson fell was within the City's care, custody, and control such that the "real property" exception to governmental immunity should have applied.  *Id*. at 1461a.  As noted, however, American's crossclaims against the City made no allegations based on the lease between the two entities, which would presumably govern which entity had legal control of the area where Robinson fell.  The City asserted in its crossclaim against American that the contractual terms of the lease attributed that area to American, but

---

[12] Judge Kennedy's December 22, 2020, order disposed of American's crossclaims as well as Robinson's even though American's crossclaim would not have been formally before Judge Kennedy in the context of the City's motion for summary judgment with regard to Robinson's claims.  However, that order states clearly that "all claims and cross[-]claims against [the City] in the above-captioned matter are hereby DISMISSED with prejudice."  R.R. at 1437a.  As such, Judge Kennedy's January 7, 2021, order denying the City's motion for summary judgment as to American's crossclaim appears incongruous because the December 2020 order clearly stated that American's crossclaim was dismissed.  Normally, a court may modify or rescind an order within 30 days after its entry if the prior order has not yet been appealed.  *See* 42 Pa.C.S. § 5505.  However, Section 5505 also states that this must be done "upon notice to the parties."  *Id*.  Here, the January 2021 order was issued within 30 days of the December 2020 order, but there was no notice to the parties or indication in the docket that Judge Kennedy chose to rescind his December 2020 order.  Moreover, neither American nor Robinson sought to appeal Judge Kennedy's December 2020 and January 2021 orders although American subsequently sought reconsideration of the December 2020 order in July 2021, which Judge Kennedy denied, and American did not seek to appeal that determination either.  R.R. at 1143a-49a & 1458a.  The practical effect was that American's crossclaim against the City, which was based on allegations of the City's liability to Robinson in tort rather than contractual principles based on the lease between the City and American, was effectively terminated, the City was dismissed from the litigation, and that determination became law of the case.

22

by the time American filed its motion *in limine*, the City had been dismissed and removed from the docket and was not actively pursuing its claims against American.

On January 6, 2022, Judge Carpenter issued an order granting American's motion *in limine*. R.R. at 48a-49a. Judge Carpenter concluded that Judge Kennedy's December 2020 and January 2021 orders had not "properly extinguished" American's crossclaims against the City and that the City was not immune from American's crossclaims. *Id*. at 48a-49a. In her corresponding opinion, Judge Carpenter wrote:

> In finding that the City remained a party to the lawsuit on [American's] cross[-]claims, this Court rejected the City's claim that this Court was bound by the legal determination of [Judge Kennedy's] rulings on summary judgment, which did not explicitly cover the issue before this Court. This Court was deciding which parties were necessary for appearance at trial and which parties could be on the verdict sheet. The issue presented to this Court was not clearly ruled upon by [Judge Kennedy]. Further, this Court was not persuaded that the Streets Exception [to governmental immunity] barred the cross[]claims because [American] had averred sufficient facts that the claims at issue involved the care, custody, and control of a secured area of realty for airline operations, not a public street, and thus the Real Property Exception [to governmental immunity] would allow [American's] cross[-]claims against the City.

Trial Ct. Op., Feb. 23, 2023, at 3-4; O.R. #110.

Part of Judge Carpenter's reasoning was based on her conclusion that American's evidence showed that "the City, not [American], controlled the premises at issue because the site of the fall (in whole or in part) was located in an area of the airport *contractually* under the City's care, custody, and control." *Id*. at 2 (emphasis added). However, as noted, American's crossclaim against the City was based on assertions that the City was negligent with regard to Robinson; it contained no

23

contractual allegations against the City based on the lease between American and the City. *See* R.R. at 74a-76a.

Judge Carpenter may have concluded that American's crossclaims against the City remained viable in light of Judge Kennedy's January 2021 denial of the City's motion for summary judgment seeking dismissal of American's crossclaims against the City. However, as explained in footnote 13 above, Judge Kennedy's January 2021 order was inconsistent with his then-recent December 2020 order dismissing all claims and crossclaims against the City. The January 2021 order also lacked any statement or basis to conclude that it was intended to modify or rescind any provision of the December 2020 order. *Compare* R.R. at 1437a, *with* R.R. at 1439a. Lastly, the January 2021 order, while purporting to deny the City's motion for summary judgment on American's crossclaim against the City, did not disturb the December 2020 order's dismissal of Robinson's claim against the City, which was the only basis upon which liability of the City to American could have arisen. As discussed in footnote 13 above, any error inherent in Judge Kennedy's January 2021 order was harmless in light of the fact that neither Robinson nor American sought to appeal the December 2020 or January 2021 orders; the practical effect was that the City was dismissed from the litigation and the December 2020 order became law of the case.

The City avers that Judge Carpenter's January 2022 order violated the coordinate jurisdiction rule because it essentially overturned Judge Kennedy's December 2020 summary judgment order dismissing the City from all claims and crossclaims against it by both Robinson and, by extension, American, whose claims against the City rely on the City being liable to Robinson. City's Br. at 20; City's Reply Br. at 4. The City adds that the rule's exceptions do not apply because there

24

was no substantial change in the facts or law and no basis for Judge Carpenter to conclude that Judge Kennedy's order was clearly erroneous and that a manifest injustice would result from it remaining in effect. City's Br. at 20-30. The City notes that Judge Carpenter did not declare that Judge Kennedy's order was clearly erroneous, only that she "was not persuaded" that the "streets" exception to the Tort Claims Act applied. City's Reply Br. at 9. The City adds that even if Judge Kennedy's order was clearly erroneous, the only result would be American having to go to trial without the City being present or on the verdict sheet, which has consistently been held insufficient to amount to a manifest injustice. City's Br. at 26-27. We agree.

In supplemental briefing, the City argues that *Ivy Hill*, which was issued after the close of principle briefing in this case, rejected American's position that because its motion *in limine* differed in kind and procedural posture from the City's prior motion for summary judgment with regard to Robinson's claims, Judge Carpenter's January 2022 order did not violate the coordinate jurisdiction rule. City's Suppl. Br. at 3.

American argues that Judge Carpenter's order did not violate coordinate jurisdiction principles because Judge Kennedy's order was clearly erroneous. American's Br. at 23. American insists the evidence established that the area where Robinson fell was within City control and was defective, and therefore, the City should not have been dismissed on summary judgment. *Id*. at 24-25. American maintains that in light of Judge Kennedy's clear error, forcing American (and Robinson) to go to trial without being able to present evidence as to the City's potential liability would amount to a manifest injustice. *Id*.

25

In supplemental briefing, American acknowledged *Ivy Hill*'s holding that a difference in procedural posture alone will not overcome the coordinate jurisdiction rule. American's Suppl. Br. at 15. American maintains, however, that Judge Kennedy's December 2020 order constituted a clear error and that Judge Carpenter's order requiring the City's presence at trial and on the verdict sheet corrected that error. *Id*. at 16-17. American adds that Judge Carpenter's order would ensure all necessary parties are present at trial and that there is no allegation here that it "judge-shopped" to reach Judge Carpenter. *Id*. at 18-19.

As noted, Judge Kennedy's December 2020 order on the City's motion for summary judgment concerning Robinson's claims stated that "[a]ll claims and crossclaims asserted against [the City] in the above-captioned matter are hereby DISMISSED with prejudice." R.R. at 1437a. Nevertheless, Judge Carpenter's January 2022 order granting American's subsequent motion *in limine* stated that the City was not immune, remained a party to the action, and would be listed on the verdict sheet. *Id*. at 48a-49a. Judge Carpenter's order, in effect, overruled Judge Kennedy's order.

American's motion *in limine* before Judge Carpenter differed in kind from the City's prior motion for summary judgment before Judge Kennedy. However, the procedural nature of different motions before trial judges, without more, is not relevant in a coordinate jurisdiction analysis. *Ivy Hill*, 310 A.3d at 758. Accordingly, the difference here does not preclude a determination that Judge Carpenter's ruling violated the coordinate jurisdiction rule unless one of the two exceptions applies.

The first exception requires a substantial change in the facts or law between the first and second rulings. *Ivy Hill*, 310 A.3d at 758. American did not

26

argue that any such change occurred. The arguments and evidentiary references made by Robinson in opposition to the City's motion for summary judgment, specifically that the City controlled the area where she fell and that the City should not be found immune, were identical to American's arguments in support of its subsequent motion in *limine*. As such, this exception is not applicable.

The second exception requires a showing that the first ruling was clearly erroneous and would result in manifest injustice. *Ivy Hill*, 310 A.3d at 758. In the context of the City's motion for summary judgment against Robinson's claims, both sides presented evidence-based arguments for and against the City's immunity or liability to Robinson. Judge Kennedy accepted the City's position, concluding that the evidence showed only that Robinson fell on an oily substance "on" the tarmac and not because of a defect "of" the tarmac that would satisfy either the "streets" or "real estate" exceptions to the City's asserted immunity. Trial Ct. Op., Sept. 16, 2024, at 7-8. Judge Kennedy also concluded that the City did not have common law notice of the condition of the area where Robinson fell, which is part of the "streets" exception to immunity but also an independent duty of care owed by a landowner to business invitees based on Section 343 of the Restatement (Second) of Torts. *Id*. at 9-10.

Even though Judge Kennedy's December 2020 order, which was an evidence-based adjudication, became the law of the case when neither Robinson nor American sought to appeal it, Judge Carpenter concluded differently when presented with the same issue and evidence in the context of American's motion *in limine* months later. Although Judge Carpenter believed American's crossclaims against the City were still viable, our review of the record indicates otherwise. American's crossclaims against the City were based solely on allegations of the City's liability

27

in negligence to Robinson, which Judge Kennedy rejected in light of the City's immunity and lack of common law notice. Importantly, American did not raise any contractual crossclaims against the City based on the lease between the two entities, and by the time Judge Carpenter considered American's motion *in limine*, the City had been dismissed on the basis of Judge Kennedy's order and was not actively pursuing its contractual crossclaims against American based on the lease, which would have determined which entity had control over the area where Robinson fell. *See* R.R. at 74a-76a.

Even if Judge Carpenter may have disagreed with Judge Kennedy's determination regarding the nature of the area where Robinson fell, she did not state that it constituted clear error. Moreover, Judge Carpenter did not address Judge Kennedy's determination that the City had no common law notice of the area's condition, which constituted an independent basis for dismissing the City from this litigation. These conclusions by Judge Kennedy were evidence-based adjudications that became the law of the case when neither Robinson nor American sought to appeal his order. Because this case presents no basis for a finding that the City was liable in tort to Robinson, the City cannot be kept in this litigation for the purposes of contribution, indemnity, or apportionment of fault, as discussed above.

The only reason the City could still be considered a party when this matter came before Judge Carpenter on American's motion *in limine* was because of Judge Kennedy's January 2021 order denying the City's motion for summary judgment against American's crossclaims. As stated, that order was inconsistent with Judge Kennedy's December 2020 order dismissing all claims and crossclaims against the City; it was also unsupported because American raised no contractual crossclaims against the City based on their lease. This apparent discrepancy is a far

28

cry, however, from supporting a conclusion that Judge Kennedy's order was clearly erroneous.

This case is analogous to *Goldey*, where the circumstances were like "every case where summary judgment has once been denied and a second judge has a different view. In effect, the defendant has happened upon a judge for trial who agrees with the analysis that the first judge did not accept." 675 A.2d at 267. In its reply to American's motion in *limine*, the City correctly described American's efforts here as little more than thinly veiled attempts to get a second bite at the proverbial apple. R.R. at 1519a-28a.

Judge Carpenter's explanation that the issue before her was not the same as that before Judge Kennedy because she was deciding "which parties were necessary for appearance and trial and which parties could be on the verdict sheet" is unavailing. It suggests that Judge Kennedy erred in determining that the City bore no liability at all to Robinson, but Judge Carpenter stated only that she "was not persuaded" of the City's asserted immunity because she concluded that the evidence suggested otherwise. *See* Trial Ct. Op., Feb. 23, 2023, at 3-4. Accordingly, the record establishes only that Judge Carpenter came to a different conclusion on that issue when presented with the same facts and arguments as Judge Kennedy. It does not establish that Judge Kennedy's grant of summary judgment to the City was clearly erroneous on the issue of the nature of the area where Robinson fell, which might have subjected the City to liability at trial. Moreover, Judge Carpenter did not even address Judge Kennedy's determination on common law notice, which was an independent basis for the City's non-liability at trial as well as a bar of its inclusion on the verdict sheet, as discussed above in "A."

Even if Judge Kennedy's December 2020 order amounted to clear error, the exception to the coordinate jurisdiction rule also requires a manifest injustice. *Ivy Hill*, 310 A.3d at 754. American's argument to Judge Carpenter in support of its motion in *limine* posited that having to go to trial without the City as a co-defendant or even just listed on the verdict sheet would constitute a manifest injustice. R.R. at 1461a. However, this Court held in *Bates* that an alleged "waste of resources" incurred by a party (or, by extension, the courts) in going to trial when an unfavorable outcome would likely be overturned on appeal was insufficient to create a manifest injustice. 150 A.3d at 131.

Here, the result of letting Judge Kennedy's order stand would be that American must go to trial and make its own case that it is not liable to Robinson; as noted above, it may argue that it did not control the area where Robinson fell, but it may not assert that the City is liable. We recognize that if American loses, it may ultimately see the verdict overturned on appeal. In light of our precedent, however, this does not establish a manifest injustice, and the clearly erroneous/manifest injustice exception to the coordinate jurisdiction rule does not apply here.

## IV. Conclusion

American, which had a stake in the City's motion for summary judgment concerning Robinson's claims, failed to oppose the motion or seek to appeal Judge Kennedy's December 2020 order granting the motion and dismissing the City from this litigation. Accordingly, American could not pursue the City at trial or have the City on the verdict sheet; that said, American may appeal after trial, depending on the outcome. We hold that Judge Carpenter's January 6, 2022, order granting American's motion in *limine* and effectively restoring the City to this

litigation for trial purposes violated the coordinate jurisdiction rule. As such, Judge Carpenter's order is reversed and this matter is remanded for further proceedings in accordance with this Opinion, including for issuance of an order directing the City of Philadelphia to formally withdraw its crossclaims against American.

_____
CHRISTINE FIZZANO CANNON, Judge


Judge Dumas did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Tasha Robinson                                    :
                                                  :
                    v.                            :
                                                  :
                                                  :
Philadelphia International Airport,               :
City of Philadelphia, Menzies Aviation,           :
John Menzies, PLC, Menzies Aviation               :
Group (USA), Inc., Aircraft Service               :
International, Inc., PSA Airlines,                 :
and American Airlines Terminal F                  :
                                                  :   No. 263 C.D. 2022
Appeal of: City of Philadelphia                   :

# **O R D E R**

AND NOW, this 9th day of June, 2025, the January 6, 2022, order of the Court of Common Pleas of Philadelphia County is REVERSED. This case is REMANDED for further proceedings in accordance with the foregoing Opinion, including for issuance of an order directing the City of Philadelphia to formally withdraw its crossclaims against American Airlines Terminal F.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge